**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Messaoud ABDELKOUI, also known as Mel, Defendant–Appellant.**

No. 93–2081.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1993.

Decided March 23, 1994.

Barry R. Elden, Asst. U.S. Atty. and Haywood E. McDuffie (argued), Office of the U.S. Atty., Cr. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

William T. Huyck, Chicago, IL, for defendant-appellant.

Before BAUER, CUDAHY, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Messaoud "Mel" Abdelkoui, along with an accomplice, on eight counts of knowingly and unlawfully purchasing food stamps pursuant to 7 U.S.C. § 2024(b). At his sentencing hearing, the district court increased Abdelkoui's offense level under the Federal Sentencing Guidelines, which resulted in a lengthier sentence. Abdelkoui challenges both his conviction and sentencing in the court below. We affirm.

## I. Facts

In the fall of 1991, a task force comprised of representatives of various federal and local law enforcement agencies began investigating food stamp trafficking in northern Illinois. In October of that year, the task force received information from Patty Carter, a cooperating individual, that the owner of a Joliet, Illinois business, who turned out to be Abdelkoui, was interested in buying food stamps. On December 12, 1991, Carter introduced Postal Inspector Arthurine Jones, an undercover agent posing as Carter's friend "Pam King," to Abdelkoui in his Joliet store. At that meeting, Abdelkoui introduced himself as "Mel" and insisted that each party use only first names. Then, Abdelkoui asked Jones if she had food stamps to sell. Jones responded by handing Abdelkoui a book of food stamps with a face value of $195. Abdelkoui examined the food stamps and offered to pay $100 for them; Jones accepted. This meeting established an illicit business relationship between Abdelkoui and Jones based on the purchase and sale of food stamps.

On seven different occasions over the following eight months, Abdelkoui would exchange either merchandise or money for food stamps. The pattern was the same; Jones, armed with food stamps provided by the task force, would meet Abdelkoui in his store. There, Abdelkoui would agree to purchase the food stamps for approximately half their face value. All told, Jones provided $8,955 worth of food stamps to Abdelkoui in exchange for $3,170 in cash, four automobile

tires worth $750, and a 1980 Chevrolet Caprice worth either $200 or $600.[1]

On September 22, 1992, a federal grand jury returned a nine count indictment charging that on eight specific dates, Abdelkoui and his accomplice, Kim Chhim, knowingly acquired and possessed United States Department of Agriculture food stamp coupons having a value of more than $100, in a manner not authorized by statute or regulations, in violation of 7 U.S.C. § 2024(b). Abdelkoui was named in the first eight counts of the indictment, while Chhim was named in the last five counts. Following a three day trial, a jury convicted both defendants on their respective charges in the indictment. The district court sentenced Abdelkoui to 14 months in prison and three years of supervised release. The district court's sentence, pursuant to the Federal Sentencing Guidelines, included both a two point increase in offense level for obstruction of justice because Abdelkoui perjured himself and a two point increase in offense level for more than minimal planning. Abdelkoui appeals both his conviction and his sentence.

## II. Analysis

### A. The Conviction

Abdelkoui challenges both the sufficiency of the government's evidence and two instructions given to the jury by the district court. With respect to his first contention, Abdelkoui claims that he did not act in a way that he subjectively knew was illegal. In addition, he claims that he was unable to form the requisite intent because he was impaired by his diabetic condition. Abdelkoui's assertions amount to a claim that the government's evidence was insufficient to prove the elements of the crime with which he was charged beyond a reasonable doubt. Our task, then, is to review the evidence in a light most favorable to the government to ascertain whether "any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Boykins*, 9 F.3d 1278, 1282

(7th Cir.1993) (quoting *United States v. Tanner*, 941 F.2d 574, 586 (7th Cir.1991)).

The burden on the government was to prove that Abdelkoui knowingly acquired and possessed food stamps having a value of more than $100, in a manner not authorized by statute or regulations. 7 U.S.C. § 2024(b) (1993); *see United States v. Liparota*, 471 U.S. 419, 422, 105 S.Ct. 2084, 2086, 85 L.Ed.2d 434 (1985). Essentially, Abdelkoui asserts that the evidence offered by the government did not prove that he had the necessary *mens rea* to commit the offense. To prove that Abdelkoui knew that his acquisition of food stamps was unauthorized, the government need not have demonstrated that Abdelkoui had knowledge of specific regulations; nor was the government required to produce any extraordinary evidence conclusively demonstrating his state of mind. *Liparota*, 471 U.S. at 434, 105 S.Ct. at 2092. Rather, "the [g]overnment may prove by reference to facts and circumstances surrounding the case that [Abdelkoui] knew that his conduct was unauthorized or illegal." *Id.*

The government offered several forms of evidence demonstrating that Abdelkoui knew his conduct was illegal. On eight different occasions, he purchased food stamps for roughly half their face value. Further, Abdelkoui repeatedly chastised Jones for failing to deliver more food stamps more frequently and had complained to her that he had tried to reach her several times to arrange additional transactions. In addition, all the food stamps were stamped "nontransferable." Moreover, there was testimony by Jones, supported by tape recordings of the transactions, that Abdelkoui had requested that they use only first names and that he also had mentioned that their business was "very private" and "nobody knows nothing about nobody." This evidence clearly supports the jury's guilty verdict.

Abdelkoui offers differing explanations for his conduct in these transactions. First, Abdelkoui protests that he only gave Jones money because he wanted to have sexual relations with her; this argument is without

1. Abdelkoui had told Jones that the car was worth $600, but noted its value on Jones' receipt as $200.

merit. While the transcripts of the tape recordings of the transactions are replete with Abdelkoui's frank, often graphic, offers of sex to Jones, it is clear that this would simply have been a side benefit to Abdelkoui of his business relationship with Jones. When Abdelkoui gave money to Jones, it was only given in exchange for food stamps. Moreover, Jones' rejections of Abdelkoui's advances did not deter Abdelkoui from pursuing additional (and lucrative) acquisitions of food stamps.

In addition, Abdelkoui also claims that his diabetes, specifically attacks of hypoglycemia, precluded him from forming the requisite intent. This claim, too, is spurious. Abdelkoui's doctor testified on his behalf that these attacks are infrequent, short in duration, and obvious to an observer. Jones testified that she noticed none of the symptoms of an attack of hypoglycemia during any of the transactions. Further, it is difficult to imagine that these infrequent and brief attacks occurred at precisely the time of Abdelkoui's meetings with Jones at which he purchased food stamps without her noticing any symptoms of his condition. Our review of all the evidence, and Abdelkoui's attempted explanation of his conduct, clearly demonstrates that Abdelkoui knowingly purchased and possessed food stamps and that the evidence clearly supported Abdelkoui's conviction.

■ Abdelkoui also complains that two jury instructions were improper. In reviewing the fitness of jury instructions to which objections were properly raised in the proceedings below, "we must determine from looking at the charge as a whole, 'whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.'" *Boykins*, 9 F.3d at 1285 (quoting *Trustees of Indiana Univ. v. Aetna Casualty and Sur. Co.*, 920 F.2d 429, 437 (7th Cir.1990)). If they are fair and accurate summaries of the law, the instructions will not be disturbed on appeal. *Id.* (citing *United States v. Doerr*, 886 F.2d 944, 960 (7th Cir.1989)). In addition, the trial judge is given substantial discretion with respect to the specific wording of the instruction. *United States v. Penson*, 896 F.2d 1087, 1090 (7th Cir.1990).

■ At the jury instruction conference, Abdelkoui proposed a diminished capacity instruction modeled after the Seventh Circuit Pattern Instruction concerning intoxication. His version read:

> Evidence has been introduced that the defendant Abdelkoui was suffering from a diabetic condition at the times of the commission of the acts charged in the indictment. Knowledge that the acquisition of food stamps was in a manner not authorized by statute or regulations is an essential element of the offenses charged in the indictment. The evidence regarding the diabetic condition may be sufficient to create a reasonable doubt as to whether the defendant was able to form the required intent to commit the offense charged.

Instead of that instruction, the district court fashioned and provided the jury with the following instruction: "Evidence has been presented that defendant Abdelkoui had diabetes during the period covered by the indictment. You may consider evidence regarding defendant's diabetic condition in determining whether the defendant was able to form the required intent to commit the offense charged." We find that the diminished capacity instruction given did not mislead the jury in any way. Further, we find that it fairly appraised the jury of its option to consider Abdelkoui's diabetic condition and accord that condition whatever weight it deserved.

■ Abdelkoui also challenges another instruction. That instruction read:

> The acquisition and possession of food stamp coupons is regulated by Title 7, Code of Federal Regulations, Section 278.2 which provides in pertinent part that coupons shall be accepted by an authorized retail food store only in exchange for eligible food. Coupons may not be accepted in exchange for cash, except when cash is returned as change in a transaction in which coupons were accepted in a payment for eligible food.

He claims that this instruction was inapplicable to his case and misled the jury. We agree that this instruction did not apply to this case and was of no help to the jury. We cannot agree, however, that Abdelkoui was prejudiced by it.

■ The government claims that this instruction was necessary to prove Abdelkoui's mental state at the time of the transactions. While we understand the government's desire to have the jury thoroughly consider all its evidence, we do not believe this instruction was of any use to the jury in this regard. That Abdelkoui operated a small tire and used automobile business does not mean that this obscure regulation applying to grocers should have been given as a jury instruction to prove the illegality of his actions. But, in viewing the instructions as a whole, we do not believe this instruction caused the jury any confusion. We have already found that the government offered ample evidence to support the jury's finding that Abdelkoui knowingly acted illegally; the presence of this instruction among many did not have any impact on the jury's deliberations.

### B. The Sentencing

■ Abdelkoui argues that his sentence enhancements under the Federal Sentencing Guidelines were unwarranted. The district court increased Abdelkoui's offense level by two because he was responsible for "more than minimal planning" pursuant to section 2F1.1(b)(2)(A) of the Guidelines. We review for clear error a finding of "more than minimal planning" under this section, and we reverse it only if we are left "with a definite and firm conviction that a mistake has been committed." *United States v. Panadero,* 7 F.3d 691, 695 (7th Cir.1993) (citations omitted).

■ Abdelkoui contends that because the government agent was the seller and he merely the buyer, this section does not apply to this case. The Guidelines' Application Note 1(f), however, states: "More than minimal planning is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." Abdelkoui bought the food stamps on eight different occasions, and in no way were these transactions "purely opportune." Each time, Abdelkoui managed to produce the funds necessary to complete the transaction. In addition, on more than one occasion Abdelkoui chastised Jones for failing to offer more food stamps. Clearly, Abdelkoui was not the innocent dupe he claims to be. Therefore, the district court did not commit clear error in increasing Abdelkoui's offense level.

■ Abdelkoui also challenges the increase in his offense level for obstruction of justice. Initially, he claims that the district court did not make the findings required by *United States v. Dunnigan,* — U.S. —, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In *Dunnigan,* — U.S. at —, 113 S.Ct. at 1117, the Supreme Court held that in order to increase a defendant's offense level for obstruction of justice, the district court must "review the evidence and make independent findings necessary to establish a[n] . . . obstruction of justice." In this case, the district court did just that. The district court reviewed the evidence, including the testimony of Abdelkoui and his doctor and the tape recordings of the transactions. The district court then determined that Abdelkoui deliberately lied when he claimed that he was incapacitated as a result of hypoglycemia and also when he stated that he was simply attempting to curry the sexual favor of Jones. The record in this case demonstrates that the district court complied completely with the mandate of *Dunnigan.*

■ Finally, Abdelkoui complains that the district court was simply wrong in making this finding. We review a district court's factual findings pursuant to the Guidelines for clear error. *United States v. Lozoya–Morales,* 931 F.2d 1216, 1218 (7th Cir.1991). In reviewing the district court's findings with respect to this matter, we cannot say that the district court was clearly in error in determining that Abdelkoui deliberately obstructed justice. Even on appeal, he offers conflicting defenses and even goes so far as to deny purchasing the food stamps. Therefore, the district court's decision to increase Abdelkoui's offense level was proper.

### III. Conclusion

For the foregoing reasons, Abdelkoui's conviction and sentencing by the district court is

A<small>FFIRMED</small>.