**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark YOUNG, Defendant–Appellant.**

No. 93–3551.

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1994.

Decided Sept. 2, 1994.

Donna Eide (argued), Office of U.S. Atty., Indianapolis, IN, for U.S.

Thomas M. Dawson (argued), Leavenworth, KS, for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, Chief District Judge.*

RIPPLE, Circuit Judge.

In September 1991, Mark Young was convicted of conspiracy to manufacture and distribute marijuana in a quantity in excess of 1,000 plants in violation of 21 U.S.C. § 841(a)(1). He was also convicted of possession with intent to distribute more than 100 kilograms of marijuana in violation of § 841(a)(1). Mr. Young appealed. We affirmed his conviction but reversed the sentence and remanded the case to the district court for resentencing. Mr. Young now appeals his new sentence. For the reasons that follow, we vacate Mr. Young's sentence and remand to the district court for resentencing.

I

BACKGROUND

The facts underlying Mr. Young's conviction are set forth fully in *United States v. Young*, 997 F.2d 1204, 1206–07 (7th Cir.1993) (*"Young I"*). We therefore need not repeat them here. In brief, Mr. Young brokered the sale of approximately 600 to 700 pounds of marijuana that was grown and harvested

---

* The Honorable Barbara B. Crabb, Chief Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation.

from 12,500 marijuana plants on an Indiana farm. He received for his efforts between $60,000 to $70,000 ($100 per pound).

At his first sentencing proceeding, the district court found Mr. Young responsible for all 12,500 marijuana plants involved in the conspiracy, despite the fact that Mr. Young was not part of the conspiracy at the time the marijuana plants were brought to the farm, grown, and cultivated. The district court based its finding on four points:

1. The defendant joined the conspiracy while the marijuana was being prepared and when the whole quantity was not known. Tr. Sentencing at 28.

2. The defendant undertook the role of primary distributor and undertook the responsibility "to get rid of whatever marijuana was produced from this operation, because he was the distributor." *Id.* at 29. He "knew that they were producing marijuana and that his obligation was to sell what they were producing." *Id.*

3. The defendant was to receive for this service "a rather substantial commission," a commission that "reflects his major role in the conspiracy." *Id.*

4. The amount that the co-conspirators were prepared to deliver every week indicates an ongoing operation. *Id.* The district court then addressed specifically the fact that the defendant actually brokered only "one batch of marijuana" that weighed approximately 700 pounds and stated emphatically that limiting Mr. Young's participation in the conspiracy to that amount "understates his involvement in the conspiracy, and certainly understates the scope of his agreement." *Id.* at 30.

*Young I*, 997 F.2d at 1211–12. Based on its finding that Mr. Young was responsible for all 12,500 marijuana plants, the district court applied the mandatory sentencing provision of 21 U.S.C. § 841(b)(1)(A)(vii)[1] and sentenced Mr. Young to life imprisonment without release for the conspiracy conviction. On the possession with intent to distribute con-

viction, the district court sentenced Mr. Young to a concurrent sentence of 405 months. This sentence included a three-level enhancement under U.S.S.G. § 3B1.1(b) ("Aggravating Role") for the district court's finding that Mr. Young served as a manager or supervisor.

In *Young I*, we affirmed Mr. Young's conspiracy conviction but reversed the district court's sentence. We noted that, under *United States v. Edwards*, 945 F.2d 1387, 1391 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992), a district court must calculate a Sentencing Guidelines offense level based on the quantity of drugs the defendant could have reasonably foreseen to have been part of the conspiracy. We thus concluded in *Young I* that *Edwards* applies to statutory mandatory minimum sentences. 997 F.2d at 1210. We held that, "in imposing a sentence for conspiracy under the mandatory provisions of section 841(b), the district court must determine the quantity of drugs that the defendant could have reasonably foreseen." *Id.; accord United States v. Martinez*, 987 F.2d 920, 923–26 (2d Cir.1993); *United States v. Jones*, 965 F.2d 1507, 1517 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992).

We then turned to the district court's sentence of Mr. Young and its corresponding findings of fact. We concluded that the district court's determination that Mr. Young was responsible for 12,500 marijuana plants lacked "support in 'the evidence before the court.'" *Young I*, 997 F.2d at 1212 (quoting *Edwards*, 945 F.2d at 1399). We stated:

Neither the district court nor the parties in their submissions to us indicate how the record supports the inference, central to the district court's determination, that Mr. Young had any reason to know that the conspiracy involved more than the amount of marijuana he actually brokered.

*Id.* Although the record demonstrated that Mr. Young had been advised that the marijuana farm's production rate would be 100

---

**1.** Section 841(b)'s mandatory sentencing provisions come into effect if the § 841(a) marijuana violation involves "1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or more than 1,000 or more marijuana plants regardless of weight." § 841(b)(1)(A)(vii).

pounds per week, there was nothing in the record concerning the ultimate duration of the production beyond the 600 to 700 pounds he initially was asked to broker. As a result, we remanded the case to the district court for resentencing; we expressly noted that additional evidence of Mr. Young's knowledge and activities might be necessary. We also stated that the district court would have to revisit on remand its determination that Mr. Young was a manager or supervisor because its analysis on the issue explicitly relied on its findings with respect to the quantity of marijuana for which it found Mr. Young responsible.

At the resentencing hearing on remand, the government called Claude Atkinson as its only witness. Atkinson and Earnest Montgomery had been the founding members of the conspiracy to grow, cultivate, and sell marijuana of which Mr. Young was convicted of being a member. *See United States v. Atkinson*, 979 F.2d 1219 (7th Cir.1992), *aff'd on appeal from remand*, 15 F.3d 715 (7th Cir.1994). Atkinson testified that, although he was sure that Mr. Young had been informed that there were other buyers for the marijuana in addition to Mr. Young's buyers, he could not recall whether Mr. Young had been informed as to how much marijuana those buyers would receive. Atkinson also estimated that, under optimum conditions, a marijuana plant on his farm would yield .25 pounds of marijuana.[2] On cross-examination, Atkinson conceded that Mr. Young had been informed only that other buyers were purchasing "very small quantities." Sent. Tr. 32. He also stated that Mr. Young had not been involved in growing and cultivating the marijuana, and that he did not know whether Mr. Young knew anything about marijuana cultivation in general. Atkinson also stated on cross-examination that Mr. Young had no decision-making authority in the organization.

Following the presentation of evidence, the district court discussed its findings of fact. Although the district court made no finding concerning whether Mr. Young had reason to know Atkinson's production ratio, the district court imputed to Mr. Young knowledge of the one-plant-equals-.25 pounds ratio. Sent. Tr. 112–13. As a result, the district court found that Mr. Young could have reasonably foreseen that the conspiracy entailed more than 1,000 marijuana plants, and that he therefore was eligible for the mandatory statutory minimum under § 841(b)(1)(A)(vii):

> As defendant was adjudicated guilty of Conspiracy to Manufacture and Distribute Marijuana in Excess of 1,000 Plants in count 1, the court found the defendant was responsible for 2,800 plants of marijuana based on 4 plants per pound. The defendant brokered 700 pounds of marijuana which was being processed at 100 pounds per week. Therefore, the mandatory statutory penalty of life imprisonment was applicable and the court sentenced the defendant to life as to count 1.

Statement of Reasons (Appellant's App. at 5). As for the aggravating-role enhancement in connection with the substantive conviction for possession with intent to distribute, the court stated:

> The court determined a 3–level enhancement was warranted for Role in the Offense as the defendant received a larger share of the fruits of the crime and he recruited at least 2 accomplices to buy the marijuana. Additionally, the organizers of the conspiracy trusted his judgment in recruiting buyers, therefore allowing him to exercise decision making authority in de-

**2.** Atkinson's testimony on this point on direct examination was as follows:

> Q. Okay. Approximately how many plants that you produced on the farm, on the farm that you had with Earnest Montgomery, did it take to make one pound of marijuana for sale?
> A. I can give you only conjecture on that.
> Q. Well, why don't you give me your best estimate based on your experience with the plants on the farm?

> A. Well, based on my experience with this type of growing and with the epitome as far as conditions are concerned, one would expect perhaps a quarter of a pound average.
> Q. One plant would make a quarter pound?
> A. If—on the epitome of growing conditions, yes, that might be so.
> Q. By the term "epitome," you mean under the best growing conditions?
> A. That's correct.
> Sent. Tr. 17–18.

ciding who would be recruited to buy the marijuana.

*Id.*

## II

## DISCUSSION

■ On appeal, Mr. Young submits that the district court erred in its calculation concerning the quantity of marijuana for which he was found responsible as a member of the conspiracy. He also argues that the district court erred in increasing his offense level by three for his role in the offense under U.S.S.G. § 3B1.1(b). We shall address each issue in turn. We review a district court's findings of fact at sentencing for clear error. *United States v. Abdelkoui,* 19 F.3d 1178, 1183 (7th Cir.1994). We review its interpretation of a statute and the Guidelines de novo. *United States v. Haynes,* 969 F.2d 569, 571 (7th Cir.1992).

### A. *Marijuana Quantity Calculation*

#### 1.

Mr. Young argues that, as in *Young I,* the record fails to support the district court's finding concerning the quantity of marijuana he could have reasonably foreseen to have been involved in the conspiracy.[3] He contends that the district court had no basis to find that he could have reasonably foreseen any quantity of marijuana beyond the 700 pounds he brokered. This is clear, Mr. Young states, from the fact that no evidence was presented at his resentencing hearing about which this court was not already aware when it reached the same conclusion. More important, he argues that, with the exception of Atkinson's testimony concerning the marijuana production ratio, no evidence was presented demonstrating that Mr. Young had any reason to foresee the number of marijuana *plants* that was involved in the conspiracy.

As to Atkinson's estimated production ratio (one plant equals .25 pounds), Mr. Young submits that the district court's use of it in converting the number of pounds he brokered into a quantity of plants directly contravened the conversion equation the Sentencing Guidelines set forth in the "equivalency provision" of U.S.S.G. § 2D1.1(c) n.*.[4] The equivalency provision states that, in an offense involving fifty or more marijuana plants, each marijuana plant should be treated as equivalent to one kilogram of marijuana for sentencing purposes. Mr. Young therefore argues that, if the district court deemed it appropriate to convert the 700 pounds of marijuana he brokered into a quantity of plants, it should have employed the equivalency provision. If the court had done so, Mr. Young contends, it would have concluded that the 700 pounds—or approximately 320 kilograms—was the equivalent of 320 plants, which in turn should have been treated as equivalent to 320 kilograms for sentencing purposes. Instead, the district court converted the 700 pounds into 2800 plants by utilizing Atkinson's "real production" formula of one plant equals .25 pounds (or four plants equal one pound). Mr. Young argues that the district court's use for sentencing purposes of Atkinson's production estimation is precisely the type of "real production" formula that this court has rejected in previous defense challenges to the equivalency provision of U.S.S.G. § 2D1.1(c) n.*. *See, e.g., United States v. Atkinson,* 15 F.3d 715, 720 (7th Cir.1994); *United States v. Montgomery,* 990 F.2d 266, 269 (7th Cir.1993); *United States v. Haynes,* 969 F.2d 569, 570–71 (7th Cir.1992). In any event, Mr. Young argues, the district court had no basis to find that he knew or had reason to know this real production ratio. Moreover, he contends, because the yield of marijuana plants varies greatly, the production ratio the district

---

**3.** *See Young I,* 997 F.2d at 1212 (concluding that the record failed to support the inference "that Mr. Young had any reason to know that the conspiracy involved more than the amount of marijuana he actually brokered").

**4.** In part, U.S.S.G. § 2D1.1(c) n.* provides:
In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more

marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

court relied upon was unreliable. As pointed out by this court in *Haynes,* 969 F.2d at 571, for instance, one plant can yield as much as one pound of marijuana.

In response, the government submits that, to the extent that Mr. Young argues that he should be sentenced on the basis of the number of pounds he brokered and not on a quantity of marijuana plants, his argument is foreclosed by this court's decision in *Young I,* 997 F.2d at 1209 (stating that, because Mr. Young was charged with a manufacturing conspiracy, the government could rely on the number of marijuana plants involved). To the extent that Mr. Young challenges the district court's finding that he could have reasonably foreseen that the conspiracy involved 2800 marijuana plants, the government argues that the court's finding was not clearly erroneous. Atkinson testified at the resentencing hearing that Mr. Young was informed that there were others buying marijuana produced at the farm; the government states that Mr. Young therefore had reason to know that the amount of marijuana involved in the conspiracy was greater than the 700 pounds he brokered. Moreover, as the district court found, Atkinson's knowledge of how many plants it took to produce a pound of marijuana can be imputed to Mr. Young because he was part of the conspiracy. He need not have had actual knowledge of that ratio. After all, the government urges, the standard for conspiratorial liability is reasonable foreseeability, not actual knowledge. Under Atkinson's production ratio, the government contends that the district court had sufficient evidence to find that Mr. Young was responsible for 2,800 marijuana plants, which rendered him eligible for the mandatory provision of 21 U.S.C. § 841(b)(1)(A)(vii).

### 2.

In assessing these contentions, it is important to note at the outset that, in basing its determination of the number of plants for which Mr. Young was responsible on the number of pounds he brokered, the district court on remand agreed with our assessment in *Young I* that Mr. Young had no reason to know that the conspiracy involved more marijuana than the 700 pounds of marijuana he brokered.[5] The issue on appeal from resentencing, therefore, involves only the question of how to characterize that 700 pounds for sentencing purposes. The district court believed that, based on our opinion in *Young I,* Mr. Young's conviction on a manufacturing offense mandated that his sentence be based on the number of plants equivalent to 700 pounds of marijuana. The government agrees; Mr. Young does not. As we stated above, he believes the district court should have used the equivalency provision of U.S.S.G. § 2D1.1(c) n.* to convert the weight of marijuana he brokered into a number of plants, and then back again to the equivalent number of kilograms for sentencing purposes. We, however, cannot accept either the government's or Mr. Young's approach.

On remand, the district court correctly followed our decision in *Young I,* which relied on our decision in *Edwards,* in determining that it could base Mr. Young's sentence only on the quantity of marijuana he could have reasonably foreseen the conspiracy to have involved. That quantity was 700 pounds, the amount he brokered for the defendants. Because the offense at issue was a manufacturing offense—that is, one "involving marijuana plants," U.S.S.G. § 2D1.1(c) n.*; *Atkinson,* 15 F.3d at 720; *Haynes,* 969 F.2d at 572—the district court determined the quantity of marijuana plants on which Mr. Young's sentence could be based. It did so based on Atkinson's testimony that one plant on his farm yielded approximately .25 pounds, a ratio that the district court "imputed" to the defendant. The district court, however, made no determination concerning whether Mr. Young knew this ratio or, more importantly, whether he had any reason to know it. The court stated that it was not required to make a determination on foreseeability with respect to Atkinson's production ratio.

■ In this latter regard, the district court erred in failing to follow the full extent of our holdings in *Young I* and *Edwards.* In those cases, we made clear that conspiratori-

---

**5.** *See* Sent. Tr. 114–15 (stating on remand that "I find that it was reasonably foreseeable that this

Defendant distributed the amount he actually distributed, 700 pounds").

al liability is based on foreseeability, regardless of whether the sentence is based on the Sentencing Guidelines, as in *Edwards*, 945 F.2d at 1387, or on a statutory mandatory minimum, as in *Young I*, 997 F.2d at 1210. Although such foreseeability does not, of course, require Mr. Young to have had actual knowledge of the production ratio, it does require the government to demonstrate, and the district court to find, that Mr. Young at least have had reason to know the number of marijuana plants for which he was held responsible. The district court made no such finding in this case; indeed, it expressly stated that it was not required to do so.

■ But the district court's decision to convert the 700 pounds of marijuana it found that Mr. Young could have reasonably foreseen into a quantity of marijuana plants involves a further fundamental misapprehension of *Young I* and *Edwards*. In *Young I*, we applied *Edwards'* guidelines approach to the context of mandatory statutory minimums. In doing so, we stressed that statutory sentencing provisions and the Sentencing Guidelines must be read consistently with one another, that they must be read as a whole. Congress did not intend "to employ under the [mandatory sentencing] statute a sentencing scheme that is so completely at odds with the measured approach clearly required by the guidelines." *Young I*, 997 F.2d at 1210 (relying on *United States v. Martinez*, 987 F.2d 920, 925 (2d Cir.1993)). In a case such as this one, the guidelines make clear that any quantity of marijuana will ultimately be reduced to a weight for sentencing purposes. When the offense is one of growing or manufacturing marijuana plants, the sentence *may* be based on the number of plants involved, which is then converted into a weight pursuant to the equivalency provision. However, even in such an offense "involving marijuana plants," U.S.S.G. § 2D1.1(c) n.*, the number of plants on which the ultimate weight will be based *must* have been reasonably foreseeable to the defendant. This approach, as we made clear in *Young I* and *Edwards*, controls regardless of whether a statutory mandatory minimum applies or the Sentencing Guidelines apply. Because the government failed to demonstrate how many plants the defendant could have reasonably foreseen, the district court should have sentenced Mr. Young based on the weight for which it found him responsible in the first place, 700 pounds. *See supra* note 5 and accompanying text.

■ By virtue of our discussion, it is apparent that we also reject Mr. Young's argument that he be sentenced on the basis of a reverse application of the equivalency provision of U.S.S.G. § 2D1.1(c) n.*. Although in this case the end result is the same, our disagreement with Mr. Young stems from the nature of the equivalency provision. The provision allows a court to convert a given number of plants into a weight for sentencing purposes. It "reflects Congress' judgment that an individual who grows 150 plants is just as culpable as one who has distributed 150 kilograms of marijuana." *Haynes*, 969 F.2d at 571. A court may thus use the equivalency provision to convert plants to kilograms. The table was not designed, however, to permit the conversion of kilograms to plants to kilograms. Here, although the government was entitled to cast its initial charge in terms of plants, it failed to meet its burden of showing the plants that Mr. Young could reasonably foresee. If no number of plants can be attributed as having been reasonably foreseeable by the defendant, then the defendant must be sentenced on the weight of the marijuana—regardless of the nature of the underlying marijuana conviction. In Mr. Young's case, that weight is 700 pounds, or approximately 320 kilograms. We therefore vacate the district court's sentence and remand the case for resentencing consistent with this opinion.

B. *Enhancement for Aggravating Role, U.S.S.G. § 3B1.1*

■ Mr. Young also submits that the district court erred in enhancing his sentence for an aggravating role in his possession with intent to distribute conviction. *See* U.S.S.G. § 3B1.1(b). We already have held, however, that the district court's sentence must be vacated and remanded for resentencing. Because "the effect of a vacation is to nullify the previously imposed sentence," the district court on remand will be writing "on a clean

slate." *Atkinson,* 979 F.2d at 1223. As a result, we have not always addressed a defendant's additional arguments concerning alleged errors in the sentence process. *See id.* Nonetheless, in this case the district court is unlikely to revisit its sentence for Mr. Young's substantive offense and its corresponding finding that his role in the offense required a three-level enhancement under U.S.S.G. § 3B1.1(b). We therefore shall, for the sake of judicial economy, address Mr. Young's argument on the issue of the district court's enhancement for an aggravating role. A district court's determination on this issue is subject to reversal only for clear error. *United States v. Vargas,* 16 F.3d 155, 160 (7th Cir.1994); *United States v. Cantero,* 995 F.2d 1407, 1413 (7th Cir.1993).

The district court found that an enhancement for Mr. Young's role in the offense as a manager or supervisor was proper for three reasons. First, he received a large share of the fruits of the crime. He earned between $60,000 and $70,000 over the course of several weeks, and contributed no capital to the criminal enterprise. Second, he recruited "accomplices" to purchase the marijuana. Sent. Tr. 132. Finally, Mr. Young had a decision-making position in the operation stemming from Atkinson's and Montgomery's trust in allowing Mr. Young to recruit persons to purchase the marijuana.

In contending that the district court clearly erred in finding his role in the offense to be that of a manager or supervisor, Mr. Young relies heavily on the testimony of Atkinson, the government's sole witness at the resentencing hearing. Atkinson testified that Mr. Young was not included in many of the inner workings of the operation, that Atkinson and Montgomery set the price for the marijuana Mr. Young brokered, and, most importantly, that Mr. Young had no decision-making authority in the operation. Atkinson, Mr. Young emphasizes, stated that Mr. Young's only task in the operation was to provide Atkinson and Montgomery with potential buyers of the marijuana. Moreover, as Mr. Young points out, Atkinson testified that Mr. Young did not have final approval of potential buyers; Atkinson and Montgomery did. Thus, Mr. Young essentially contends

that Atkinson's testimony demonstrates that he was no more than a middleman distributor. As such, Mr. Young argues, he was not a manager or supervisor subject to a three-level increase under U.S.S.G. § 3B1.1(b). *See United States v. Brown,* 944 F.2d 1377, 1382 (7th Cir.1991) (concluding that "middleman status alone cannot support a finding that a defendant was a supervisor, manager or leader of a criminal activity").

Under U.S.S.G. § 3B1.1(b), a defendant who acted as a manager or supervisor in a criminal operation involving five or more participants is subject to a three-level enhancement. The Guidelines do not define the terms "manager" and "supervisor." But the commentary to U.S.S.G. § 3B1.1(b) sets forth a list of factors a court should consider in "distinguishing a leadership and organizational role from one of mere management or supervision." There are seven such factors: (1) the exercise of decision-making authority; (2) the nature of the participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n. 3); *United States v. Skinner,* 986 F.2d 1091, 1096 (7th Cir.1993). Like others circuits, *see Skinner,* 986 F.2d at 1096 n. 1 (collecting cases), this circuit has used these factors for more than simply distinguishing an organizational and leadership role from one of management or supervision. In fact, we have employed them "to determine whether a defendant qualifies as a supervisor at all." *Brown,* 944 F.2d at 1380 n. 1; *see also United States v. Bell,* 28 F.3d 615, 617 (7th Cir. 1994) (using the factors "in distinguishing 'organizers and leaders' from 'rank and file criminals'"); *United States v. Ramos,* 932 F.2d 611, 618 n. 11 (7th Cir.1991) (utilizing the commentary factors "in distinguishing between those defendants who should be classified within section 3B1.1(c) and those who should not"). We therefore shall use the commentary's factors in reviewing the district court's enhancement determination.

■ At first blush, it appears that Mr. Young is not off-target in comparing the role he played in the marijuana operation to the role the defendant occupied in *Brown.* In that case, we concluded that, in light of the factors listed in the commentary to U.S.S.G. § 3B1.1, the district court had improperly enhanced the defendant's sentence under U.S.S.G. § 3B1.1 on the basis of his middleman drug distributor status. *Id.,* 944 F.2d at 1381. We expressly emphasized, however, that the district court in that case had erred in relying *solely* on the defendant's middleman status. *Id.* at 1382. We made clear that "[m]iddlemen are not, of course, immune from application of § 3B1.1." *Id.* at 1381. We noted that, if the government had shown the presence of some of the factors in the commentary to U.S.S.G. § 3B1.1, such as a larger cut of the profits or recruitment of accomplices, the result may well have been different. *Id.*

In this case, the government did show the presence of these factors. Mr. Young received a large share of the criminal proceeds, yet he contributed no financial capital. Such a setup reflects the fact that the human capital he contributed was highly valued, which is often indicative of a management or supervisory position. He also recruited buyers, in New York, Florida, and elsewhere, through whom the operation could distribute its marijuana nationwide. As we stated in *Young I,* 997 F.2d at 1213, "a good deal of evidence of record supports the conclusion that Mr. Young was quite a bit more than a middleman." Although the record lends little support to show that Mr. Young exercised control over others, "it is clear that control over others is not the sine qua non of a finding that a person is manager or supervisor." *Id.*

■ More important, however, we stressed in *Brown* that the defendant's role in that case—a third-tier distributor—failed to demonstrate that the defendant "was more culpable than others for the wrongdoing—the central concern of § 3B1.1." *Brown,* 944 F.2d at 1382; *see also id.* at 1381 ("The central concern of § 3B1.1 is relative responsibility."). We iterated this concern for relative culpability in *Skinner,* 986 F.2d at 1097,

in which we stated that the proper focus of an inquiry into a U.S.S.G. § 3B1.1 enhancement was "on the relative responsibility for an offense and not exclusively on one of the application note factors." *See also Vargas,* 16 F.3d at 160. In this case, eleven persons were indicted on the basis of participating in the criminal operation at issue. The government concedes that Atkinson and Montgomery were the clear leaders and organizers, but contends that Mr. Young's relative responsibility is significantly higher than that of any person in the operation other than Atkinson and Montgomery. Mr. Young does not contest this assertion and, from our reading of the facts surrounding the criminal organization, he likely cannot. Unlike many of the other participants, *see, e.g., Haynes,* 969 F.2d at 571 (stating that Haynes "worked at the farm" and "helped transplant seedlings, guard the farm, tend the fields, and harvest and process the mature plants"), Mr. Young's participation in the operation was critical to its success; the operation simply could not have flourished without his distribution contacts. Mr. Young was, in short, "more responsible than his codefendants for the commission of the offense." *Skinner,* 986 F.2d at 1097.

We thus must conclude that the district court did not commit clear error in enhancing Mr. Young's offense level by three for his role in the offense pursuant to U.S.S.G. § 3B1.1(b). We note that, as a matter of original impression, the enhancement in this case would be a very close call. The district court identified the presence of only three of the seven factors set out in the commentary to U.S.S.G. § 3B1.1, and it failed to discuss in detail Mr. Young's responsibility in relation to the other participants in the criminal organization. Nonetheless, under the applicable deferential standard of review, we must affirm the three-level increase in the offense level.

### Conclusion

For the foregoing reasons, the sentence of the district court is vacated and remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.

CRABB, Chief District Judge, concurring.

I agree with Judge Ripple's resolution of Mark Young's challenge to the application of the Sentencing Guidelines. I write separately to state my belief that, whether or not a defendant knows the production ratio of marijuana plants, the marijuana equivalency tables should not be used to quadruple count, as they were here.