56 F.3d 67
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Nathaniel BEVERLY, Jr., Defendant-Appellant.
 No. 94-3420.
 United States Court of Appeals, Seventh Circuit.
 Argued April 25, 1995.
Decided May 19, 1995.
 
 Before FLAUM, RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Nathaniel Beverly, Jr., pleaded guilty to bank robbery, 18 U.S.C. Secs. 2113(a), and was sentenced to a ninety-two-month term of imprisonment to be followed by a three year term of supervised release. Beverly appeals the district court's decision to increase his sentence under U.S.S.G. Sec. 2B3.1(b)(2)(E). We affirm the judgment of the district court.
 
 FACTS
 
 2
 On March 7, 1994, Beverly and Richard Govan, both masked, entered through the back door of the federally insured Guaranty Bank located at 7601 W. Hampton Avenue in Milwaukee, Wisconsin. The robbery occurred shortly after the bank had closed for the day. Beverly and Govan were able to enter the bank with a back door key which had been given to Govan by a third man, Charles Hall. As Beverly and Govan entered the lobby of the bank, they yelled to the employees to keep their heads down and lie down on the floor. Beverly and Govan then took money from the open teller drawers and left. One of the bank employees, Deanne Dickerson, observed Govan holding a black handgun during the robbery. Beverly and Govan took $11,195.81 from the bank.
 
 
 3
 On April 20, 1994, Beverly provided a statement to the government admitting to his participation in the bank robbery and naming his cousin, Richard Govan, as his co-conspirator. On June 27, 1994, a one count information was filed in the district court charging Beverly with bank robbery. On August 10, 1994, Beverly entered into a plea agreement with the government and pleaded guilty to bank robbery. On October 3, 1994, a sentencing hearing was held. With an offense level of 23 and a criminal history category of VI, Beverly's applicable guideline range was 92 to 115 months. Beverly was sentenced to a 92 month term of imprisonment to be followed by a three year term of supervised release. This timely appeal followed.
 
 DISCUSSION
 
 4
 A district court's findings of fact at sentencing are reviewed for clear error. United States v. Young, 34 F.3d 500, 504 (7th Cir. 1994); United States v. Abdelkoui, 19 F.3d 1178, 1183 (7th Cir. 1994). Its interpretation of the sentencing guidelines is reviewed de novo. Young, 34 F.3d at 504; United States v. Haynes, 969 F.2d 569, 571 (7th Cir. 1992).
 
 
 5
 Under U.S.S.G. Sec. 2B3.1(b)(2)(E), a defendant's offense level for robbery shall be increased "if a dangerous weapon was brandished, displayed, or possessed ...." It is agreed that Beverly was not in possession of a dangerous weapon during the robbery. However, for the purposes of sentencing a defendant under the guidelines, a defendant is accountable for all reasonably foreseeable acts and omissions of a co-conspirator done in furtherance of a jointly undertaken criminal activity. U.S.S.G. Sec. 1B1.3(a)(1)(B).[1] Finding that Govan was in possession of a gun during the robbery, that his possession of the gun was in furtherance of the robbery, and that Beverly could have reasonably foreseen Govan's possession of the gun, the district court increased Beverly's offense level by three points pursuant to Sec. 2B3.1(b)(2)(E).[2] Beverly claims, however, that because the robbery was supposed to be an "inside job," he could not have reasonably foreseen Govan's possession of the gun during the robbery and, hence, the increase was in error.
 
 
 6
 Because it is the district court's prerogative to weigh the evidence and make determinations of credibility, United States v. Redig, 27 F.3d 277, 282 (7th Cir. 1994) (citing United States v. DePriest, 6 F.3d 1201, 1213-14 (7th Cir. 1993)), a district court's finding of fact is reviewed for clear error. United States v. Lindsey, 30 F.3d 68, 70 (7th Cir. 1994) (citing United States v. Sykes, 7 F.3d 1331, 1335 (7th Cir. 1993)), cert. denied, 115 S. Ct. 604 (1994); United States v. Hamilton, 19 F.3d 350, 358 (7th Cir. 1994). Where the finding of fact concerns the resolution of a factual dispute at sentencing, we need only consider whether it is supported by a preponderance of the evidence. Lindsey, 30 F.3d at 70 (citing United States v. Haddad, 10 F.3d 1252, 1263 (7th Cir. 1993)).
 
 
 7
 Beverly testified at sentencing that he did not know that Govan, his cousin, had a gun during the robbery, (Tr. at 17-18), and that he did not expect any firearms to be used in the robbery because it was supposed to be an "inside job," (Tr. at 18). In support of his claim that the robbery was intended to be an "inside job," Beverly testified that the night before the robbery, he checked the key he had received from Hall to ensure that he and Govan would not have to force their way into the bank. (Tr. at 19.) Beverly also stated that he was told that no weapons would be used. (Tr. at 18.)[3]
 
 
 8
 Despite Beverly's claim that the robbery was supposed to be an "inside job," because the robbery would occur within only minutes of the bank's closing, the bank employees were in the bank at the time of the robbery. (Tr. at 5.) When Beverly and Govan entered the lobby, they told the bank employees to lie down on the floor. (Tr. at 6.) It is of no consequence that someone on the "inside" had provided a key to the bank's back door. The voluntary cooperation of bank employees with two unarmed men with no customer present is problematic. Beverly could have reasonably expected Govan to bring a weapon along to ensure the employees' cooperation. Moreover, Beverly had reason to believe that Govan would bring a gun to the robbery even if there was no particular need for him to do so - Beverly testified that he'd seen Govan with guns several times in the past, (Tr. at 20-21), and that Govan liked to carry guns, (Tr. at 22). Indeed, the gun seen by Dickerson at the robbery was similar to the gun owned by Govan - both were described as black automatic guns. (Tr. at 11 and 21.) Hence, even if Govan's possession of the gun was not intended by Beverly, considering the nature of the crime and Govan's predisposition towards firearms, Beverly should have reasonably foreseen Govan's possession of the gun during the robbery. See U.S.S.G. Sec. 1B1.3, comment. (n.2).[4]
 
 
 9
 Beverly argues, nonetheless, that United States v. Hamilton, 19 F.3d 350 (7th Cir. 1994) and United States v. Rawe, 21 F.3d 850 (8th Cir. 1994) demonstrate that the district court was without sufficient evidence to demonstrate foreseeability. In Hamilton, in finding that the co-conspirator's possession of a dangerous weapon was reasonably foreseeable by the defendant, this court relied upon evidence demonstrating that the defendant knew, at the time of the robbery, that his co-conspirator had been armed. Hamilton, 19 F.3d at 357. Beverly claims that because he was not aware that Govan was in possession of the gun during the robbery, he could not have foreseen Govan's possession of the firearm. While Hamilton illustrates that a defendant's knowledge that his co-conspirator was in possession of a dangerous weapon during the crime is evidence of foreseeability, it does not hold that actual knowledge of possession of the weapon is a prerequisite to foreseeability.
 
 
 10
 The other case cited by Beverly, United States v. Rawe, 21 F.3d 850, addresses an issue different from the one presently before this court - whether it is reasonably foreseeable that a firearm would be used (not simply brandished or possessed) during a robbery. In any event, the district court relied upon many of the same factors relied upon by the Eighth Circuit in Rawe in finding that Beverly could have reasonably foreseen Govan's possession of the firearm. In Rawe, the Eighth Circuit held that since Rawe knew of her co-conspirators' prior propensity to be in possession of and use firearms, and since Rawe knew that an armed guard would be present at the ATM robbery, she could have reasonably foreseen that her co-conspirators would use their firearms during the robbery. In finding Govan's possession of the dangerous weapon to be reasonably foreseeable, the district court relied upon Beverly's knowledge that Govan had carried a firearm frequently in the past, as well as the fact that the crime was a bank robbery with several bank employees present.
 
 
 11
 For the reason stated above, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 U.S.S.G. Sec. 1B1.3(a)(1)(B) provides:
 Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
 in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.
 Id.; see United States v. Marquez, 1995 WL 58046, slip op. at * 3 (7th Cir. Feb. 14, 1995).
 
 
 [2]
 The presentence investigation report recommended that Beverly's offense level be increased by five points under Sec. 2B3.1(b)(2)(C) for possession of a firearm during the robbery. At sentencing, however, the government stated that although Dickerson's testimony was sufficient to establish that Govan was in possession of what appeared to be a firearm, because the gun was never retrieved, the government would not be able to prove that it was in fact a firearm. Since the government need only prove that an object appeared to be a dangerous weapon in order to receive a three point increase under Sec. 2B3.1(b)(2)(E), U.S.S.G. Sec. 1B1.1, application note 1(d) ("[w]here an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon."); see also United States v. Robinson, 20 F.3d 270, 277-78 (7th Cir. 1994), the government recommended that Beverly's sentence be increased under Sec. 2B3.1(b)(2)(E) rather than Sec. 2B3.1(b)(2)(C). The district court accepted the government's recommendation
 
 
 [3]
 Beverly does not say who told him this
 
 
 [4]
 Application note 2 to Sec. 1B1.3 provides:
 Note that criminal activity that the defendant agreed to jointly undertake, and the reasonably foreseeable conduct of others in furtherance of that criminal activity, are not necessarily identical. For example, two defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was in furtherance of the jointly undertaken criminal activity (the robbery) and was foreseeable in connection with that criminal activity (given the nature of the offense).
 U.S.S.G. Sec. 1B1.3, comment. (n.2).