62 F.3d 1419
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clarence E. JENNER, Jr., Defendant-Appellant.
 No. 94-2589.
 United States Court of Appeals, Seventh Circuit.
 Argued May 17, 1995.
Decided Aug. 8, 1995.
 
 Before POSNER, Chief Judge, and COFFEY and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Clarence E. Jenner, Jr., a former patrolman with the Lake County, Indiana Sheriff's Department, appeals his convictions on two counts of extortion under color of official right in violation of 18 U.S.C. Sec. 1951. He also challenges one aspect of the fifty-four month sentence he received on those convictions under the Sentencing Guidelines. For the reasons that follow, we affirm Jenner's convictions and sentence.
 
 I.
 
 2
 Jenner's sole challenge to his convictions is addressed to the district court's denial of his motion in limine to exclude certain portions of the June 19, 1993 videotape admitted as part of the government's case at trial. In the recorded conversation between Jenner and Stan McCaw, the owner/manager of the Occasions Lounge where Jenner provided off-duty security services, Jenner described two female Lake County police officers who might be involved in an undercover investigation of the lounge. Jenner first maintains that this portion of the videotape was irrelevant to the extortion charges against him. Even if relevant, however, Jenner argues that because his statements were likely to enrage the jury, the probative value of those statements was outweighed by their potential for unfair prejudice under Fed. R. Evid. 403. Jenner therefore argues that the district court's admission of the entire videotape denied him a fair trial. We review the district court's decision to admit evidence under an abuse of discretion standard. See United States v. James, 40 F.3d 850, 869 (7th Cir. 1994), cert. denied, 115 S. Ct. 948, 1160 (1995). As we explained in James:
 
 
 3
 Rule 402 of the Federal Rules of Evidence provides that all relevant evidence is admissible; Rule 401 provides that evidence is "relevant" if it has a tendency to make the existence of any material fact more probable or less probable than it would be without that evidence. A trial judge may, however, exclude relevant evidence pursuant to Rule 403 if the judge determines that "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The trial judge's weighing of the relative probative value of evidence compared with the risk of unfair prejudice or confusion is entitled to "great deference."
 
 
 4
 Id. (quoting United States v. Hughes, 970 F.2d 227, 233 (7th Cir. 1992)).
 
 
 5
 In the portion of the videotape that Jenner seeks to exclude, McCaw came to Jenner in the basement of the Occasions Lounge and handed Jenner a piece of paper with the name "Alice Fogarty" on it. McCaw told Jenner that his attorney had learned from a friend in the prosecutor's office that the Sheriff's Department intended to send a female undercover officer using that name into the lounge to pose as a dancer.[1] Jenner asked whether a woman by that name had appeared yet, and when McCaw said she had not, Jenner told McCaw to contact him as soon as she did. Jenner was at that time unaware of any undercover investigation of the Occasions, but he told McCaw that he would attempt to find out what was going on. Jenner also explained that the woman would have to be an African-American because the two female undercover officers employed by the Lake County Sheriff's Department were both African-American. Jenner then described each of those women to McCaw in some detail. Near the end of the conversation, McCaw handed Jenner some money.
 
 
 6
 Ten days later, the hidden camera in the basement of the lounge captured another conversation between Jenner, McCaw, and an undercover police officer ("Andrews") who was posing as a potential investor in the Occasions. When Andrews suggested that Jenner's services may no longer be required at the lounge, Jenner became irate, threatened to walk out, and indicated that without him, McCaw and Andrews would not know about the next undercover investigation. Andrews backed down, and Jenner then told McCaw that he should not hire a woman he suspected to be the undercover officer. When Andrews questioned whether the Sheriff's Department would respond by simply sending another undercover officer into the lounge, Jenner offered to screen each new dancer and to notify McCaw if the dancer actually was an undercover officer. Jenner also told McCaw and Andrews that he would notify them when the investigation was over. McCaw testified at trial that he paid Jenner for, among other things, notifying him if and when the lounge was under investigation by the Sheriff's Department.
 
 
 7
 Jenner maintains that his statements about the female undercover officers were not relevant to the government's extortion charges. According to Jenner, the government's charges related only to whether he intimidated McCaw into continuing to pay for security services out of fear that Jenner would use his position with the Sheriff's Department to cause problems for the lounge if the payments were terminated. The government responds, however, that obtaining money through "fear of economic harm" is but one possible method of extortion, and that a public official also violates 18 U.S.C. Sec. 1951 when he accepts money for conduct under color of official right. See 18 U.S.C. Sec. 1951(b)(2).[2] In the government's view, therefore, Jenner's statements about the female undercover officers were not only relevant to the charges against him, they were the essence of the charged offense of extortion under color of official right. We agree with the government.
 
 
 8
 As the government points out, there are two distinct prongs to the offense of extortion under section 1951(b)(2). The first prong -- use of fear of economic harm -- "is established when the public official 'acts or wields the powers of office in such a way that it causes a victim to fear some form of retribution if payment of a demanded price is not forthcoming."' United States v. Stodola, 953 F.2d 266, 271 (7th Cir.) (quoting United States v. Davis, 890 F.2d 1373, 1378 (7th Cir. 1989), cert. denied, 493 U.S. 1092 (1990)), cert. denied, 113 S. Ct. 104 (1992). Yet a public official also violates the separate "color of official right" prong "when he encourages or accepts a payment knowing that it was 'prompted by the hope that the official will be influenced in the exercise of his or her powers."' Id. (quoting Davis, 890 F.2d at 1378). Extortion under color of official right, then, is the flip side of bribery: "'Extortion under color of official right equals the knowing receipt of bribes .... [I]t is extortion if the official knows that the bribe ... is motivated by a hope that it will influence him in the exercise of his office and if, knowing this, he accepts the bribe."' United States v. Allen, 10 F.3d 405, 411 (7th Cir. 1993) (quoting United States v. Holzer, 816 F.2d 304, 311 (7th Cir.), vacated on other grounds, 484 U.S. 807 (1987)).
 
 
 9
 There can be no question that Jenner's statements about the female undercover officers were relevant to the charge of extortion under color of official right. McCaw testified at trial that one of his purposes in continuing to pay Jenner was so that Jenner would provide him with information about existing or pending investigations of the lounge by the Sheriff's Department. The payments no doubt influenced Jenner in the exercise of his official duties, as he used his position with the Sheriff's Department to obtain and to pass on information about the alleged undercover investigation to McCaw and Andrews. Jenner's statements were therefore relevant to the charge that he committed extortion under color of official right.
 
 
 10
 The district court also did not abuse its discretion in finding that the probative value of the evidence outweighed the danger for unfair prejudice under Fed. R. Evid. 403. Jenner's statements to McCaw about the female undercover officers were certainly prejudicial to his defense, but only because those statements went to the very essence of the charges against him. The statements were therefore highly probative and as such, were properly admitted against him. Finding no abuse of discretion in the district court's denial of Jenner's motion in limine, we affirm Jenner's convictions.
 
 II.
 
 11
 Jenner also raises a single challenge to his sentence under the Sentencing Guidelines. He maintains that the district court erred in enhancing his base offense level two points for obstruction of justice under U.S.S.G. Sec. 3C1.1. That section authorizes an enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. Sec. 3C1.1. Application Note 3 lists, among other things, "committing, suborning, or attempting to suborn perjury" and "providing materially false information to a judge or magistrate" as examples of the types of conduct that will support an enhancement under this guideline. U.S.S.G. Sec. 3C1.1, App. Note 3(b) & (f). "The guideline thus applies to a defendant who provides false testimony at his own trial 'concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory."' United States v. Johnson-Dix, 54 F.3d 1295, 1311-12 (7th Cir. 1995) (quoting United States v. Dunnigan, 113 S. Ct. 1111, 1116 (1993)). In Dunnigan, the Supreme Court explained that "if a defendant objects to a sentence enhancement resulting from [his] trial testimony, [the] district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same." 113 S. Ct. at 1117. We review the district court's finding that a defendant obstructed justice for clear error. Johnson-Dix, 54 F.3d at 1312.
 
 
 12
 The government contended at Jenner's sentencing hearing that the two-point enhancement for obstruction of justice was appropriate because the defendant had taken the stand in his own defense and offered testimony that was contrary to that of McCaw and indeed to some of the videotapes themselves. The government cited specific examples of where Jenner's own testimony was in conflict with all the other evidence in the case, and it highlighted in particular Jenner's testimony that he had never threatened McCaw and in fact had apologized to McCaw after one heated conversation. (See Tr. at 870-72.) Jenner's counsel contested the enhancement, arguing that his client merely had taken the stand to explain his perception of what had occurred during the videotaped conversations. Counsel agreed, however, that his client's testimony concerned matters material to the jury's determination of guilt or innocence. (Id. at 873.) The district court agreed with counsel that a defendant has an absolute right to take the stand to provide his perception of events that are crucial to the charges against him, but the court was concerned that Jenner had testified to facts that were clearly repudiated by the videotaped conversations. The court then made the following finding:
 
 
 13
 [I]n the time that I have been here I don't think I've given a two point addition [for obstruction of justice]. And that's what [the Assistant United States Attorney] was talking about, every time he's come before me I have refused it, and I do it almost all the time unless I have very, very strong evidence. And I've struggled with this, because of the fact that those videotapes were strong evidence to the contrary.
 
 
 14
 And I reviewed this, and I've put it down, because I'm trying to give every benefit that I can to the defendant, and to the fact that he was trying to explain what occurred. But after reviewing the tapes and reviewing the testimony, I feel that there has been an obstruction of justice, counsel, and I'm going to give the two points and I will take the Government's position on this.
 
 
 15
 (Tr. at 874.)
 
 
 16
 It is clear from the court's comments that it did not apply the obstruction enhancement simply because the jury had rejected Jenner's testimony in convicting him. See United States v. Jones, 983 F.2d 1425, 1430 (7th Cir. 1993) (district court prohibited from "automatically enhancing a defendant's sentence just because a jury returned a guilty verdict after the defendant testified in his or her own defense"). Instead, the court reviewed the evidence and made a finding independent of the jury's verdict that portions of Jenner's testimony had clearly been repudiated by the videotaped evidence admitted at trial. The court therefore found that in taking the stand to provide his version of events, Jenner had testified falsely about material matters. The district court's application of the obstruction enhancement in these circumstances was not clearly erroneous. See, e.g., Johnson-Dix, 54 F.3d at 1312; United States v. Mustread, 42 F.3d 1097, 1106 (7th Cir. 1994); United States v. Abdelkoui, 19 F.3d 1178, 1183 (7th Cir. 1994); United States v. Pedigo, 12 F.3d 618, 629 (7th Cir. 1993).
 
 III.
 
 17
 For the foregoing reasons, we AFFIRM Jenner's convictions and sentence.
 
 
 
 [1]
 Before McCaw purchased the Occasions, the female dancers employed there apparently had been engaged in prostitution in the rooms above the lounge. McCaw, however, put a stop to that aspect of the business, although the Occasions continued to feature female dancers. The alleged undercover investigation, then, was thought to be directed at whether prostitution or other unlawful activity, particularly drug dealing, was occurring on the premises
 
 
 [2]
 Section 1951(b)(2) defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."
 The government's indictment in this case charged Jenner with extorting money from McCaw both through fear of economic loss and under color of official right. (See R. 1.)