**UNITED STATES OF AMERICA,**
**Plaintiff–Appellee,**

v.

**Joseph D. FONES, Defendant–Appellant.**

No. 94–1210.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 14, 1994.

Decided March 30, 1995.

Patrick J. Chesley, Elizabeth L. Collins, (argued), Asst. U.S. Attys., Springfield, IL, for plaintiff-appellee.

Bruce D. Locher, Springfield, IL, (argued), for defendant-appellant.

Before COFFEY, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Joseph D. Fones was convicted of conspiracy, wire fraud, possession of surreptitious interception devices and other related offenses. Fones appeals the district court's decision to increase his sentence under U.S.S.G. § 3B1.1(b). For the following reasons, the sentence is vacated and the case is remanded for further sentencing proceedings.

## I. FACTS

Co-defendant Harry L. Daly owned and operated Beach Craft, Inc., a factory located in Hannibal, Missouri. Beach Craft began as a legitimate manufacturer and seller of fiberglass satellite dishes. However, because of the increasing amount of "scrambled" programming, the appeal of these satellite dishes declined. As a result, in the spring of 1987, Daly, with the help of Fones, began using the facilities at Beach Craft to illegally modify satellite television descramblers. This was accomplished by changing the internal circuitry of legitimate descramblers and programming the descramblers so that, with the modified descrambler, an owner of a satellite dish would be able to intercept the contents of scrambled programming without paying any access fee. With the aid of a computer, Fones was able to modify chips in the descramblers to enable the descramblers to receive unauthorized programming. Daly, with the help of some of his employees, removed the original chips in the descramblers and replaced them with the chips modified by Fones.

In the summer of 1986, co-defendants Stephen L. Shriver and Joseph R. Denman formed a company called Midwest Satellite Communications, Inc. (hereinafter "Midwest") with Shriver as the president and Denman as the vice president. After the first six months, Shriver became the sole owner of Midwest. Initially, the company sold satellite television systems and legitimate satellite descramblers. Shriver was in charge of sales and Denman was in charge of installation and service. In order to boost sales, Shriver contacted Maurice Ballard about modifying the satellite television descramblers to illegally intercept scrambled programming. Ballard modified some descramblers for Shriver and, in the spring of 1987, Midwest began selling these modified descramblers to customers along with its satellite television systems.

Meanwhile, both Daly and Fones contacted retailers in order to sell their modified descramblers. Fones contacted Midwest in the spring of 1987. Since there had been some problems with the descramblers supplied by Ballard, Midwest decided to purchase most of its descramblers from Fones. Between the spring of 1987 and December of 1987, Midwest purchased between 125 and 200 descramblers from Fones. Since Midwest was Fones' account, the sales of descramblers to Midwest were organized by Fones.

In an indictment filed on September 26, 1991, Fones, Shriver, Denman, and Daly, were charged with manufacturing, assembling, possessing, selling and transporting modified satellite television descramblers. Although not named as defendants, Tom Woolridge, Ken Toepke, Chester Price and Billie Gates were listed as co-conspirators.[1] Denman, Daly and Shriver pleaded guilty. Both Denman and Daly agreed in their plea agreements that their applicable offense levels should be increased three levels for their role in the offense as manager or supervisor.

---

1. Woolridge, Toepke, Price and Gates were salesmen at Midwest.

Shriver agreed in his plea agreement that his applicable offense level should be increased four levels for his role as leader or organizer. Fones pleaded not guilty and after a five day jury trial, he was convicted on all counts. The probation officer recommended that Fones receive a four-level enhancement as an organizer or leader of the offense under U.S.S.G. § 3B1.1(a). The government agreed and Fones objected. The district court found that Fones was not an organizer or leader. However, the sentencing hearing was continued to consider whether Fones could qualify as a supervisor or manager under § 3B1.1(b). The district court subsequently found that Fones was a manager or supervisor and enhanced his offense level by three levels pursuant to § 3B1.1(b). On January 19, 1994, Fones was sentenced to a term of 21 months of imprisonment to be followed by a three year term of supervised release.[2] Fones appeals the adjustment of his sentence under U.S.S.G. § 3B1.1(b).

## II. ANALYSIS

■ We review a district court's findings of fact at sentencing for clear error. *United States v. Young*, 34 F.3d 500, 504 (7th Cir. 1994); *United States v. Abdelkoui*, 19 F.3d 1178, 1183 (7th Cir.1994). We review its interpretation of the sentencing guidelines *de novo*. *Young*, 34 F.3d at 504; *United States v. Haynes*, 969 F.2d 569, 571 (7th Cir.1992). Section 3B1.1 of the Sentencing Guidelines provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any

criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1.

Under U.S.S.G. § 3B1.1(b), a defendant who acted as a manager or supervisor within a criminal activity involving five or more participants is subject to a three-level increase. Fones does not challenge the district court's finding that there were five or more participants to the criminal activity. Fones argues, however, that he was not a supervisor or manager. While the Guidelines do not define the terms "manager" or "supervisor," note 4 to § 3B1.1 provides that in distinguishing a leadership and organizational role from one of management or supervision, the following factors should be considered:

Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n. 4). This court has relied upon these factors in determining whether a defendant qualifies as a supervisor or manager. *Young*, 34 F.3d at 507; *United States v. Skinner*, 986 F.2d 1091, 1096 (7th Cir.1993); *United States v. Brown*, 944 F.2d 1377, 1380 n. 1 (7th Cir. 1991). *See also United States v. Bell*, 28 F.3d 615, 617 (7th Cir.1994); *United States v. Ramos*, 932 F.2d 611, 618 (7th Cir.1991).

The central purpose of § 3B1.1 is to punish a defendant for his relative responsibility within a criminal organization. *Young*, 34 F.3d at 508; *Brown*, 944 F.2d at 1382. *See also United States v. Vargas*, 16 F.3d 155, 160 (7th Cir.1994); *Skinner*, 986 F.2d at 1097. Hence, no single factor is essential to determining whether a sentence should be adjusted under § 3B1.1. *See Skinner*, 986 F.2d at 1097. In fact, this court has upheld a § 3B1.1 increase where less than all factors are present. *See, e.g., Young*, 34 F.3d at 508

---

**2.** This term of imprisonment was imposed concurrent to a 12 month term of imprisonment for

violation of 47 U.S.C. § 605(a).

(although only three of the seven factors were present, defendant nonetheless found to be a manager or supervisor for the purposes of § 3B1.1(b)). Of particular importance in determining relative responsibility, though, is that the defendant has control over other participants in the criminal activity. *Vargas,* 16 F.3d at 160; *Skinner,* 986 F.2d at 1097; *Brown,* 944 F.2d at 1381.

We have held, nonetheless, that control over others is not a prerequisite to an adjustment under § 3B1.1. *Young,* 34 F.3d at 507; *United States v. Young,* 997 F.2d 1204, 1213 (7th Cir.1993); *United States v. Rivero,* 993 F.2d 620, 624 (7th Cir.1993) (3B1.1(c)); *Skinner,* 986 F.2d at 1097 (3B1.1(c)). Even where a defendant does not have control over others, his " 'extensive management responsibilities over property, assets, or activities of the criminal organization [can] justif[y] increasing his offense level pursuant to § 3B1.1(b).' " *United States v. Carson,* 9 F.3d 576, 592 (7th Cir.1993) (quoting *United States v. Chambers,* 985 F.2d 1263, 1268 (4th Cir.1993)), *cert. denied,* — U.S. —, 115 S.Ct. 135, 130 L.Ed.2d 77 (1994). *See also Vargas,* 16 F.3d at 160 ("The fact, however, that the defendant did not exercise ... control [over others] does not necessarily disqualify the defendant for a Section 3B1.1 increase. Rather, in some cases it may be enough that the defendant 'orchestrated' or simply 'coordinated' the activities of others.") (citing *Skinner,* 986 F.2d at 1099; *Rivero,* 993 F.2d at 624).

In finding that Fones was not a leader or organizer of the conspiracy, the district court stated:

At no time during the conspiracy did Defendant exercise any type of control over any co-defendants. Defendant worked in Co–Defendant Daly's building which indicates that if either party were to have control over another it would be Daly over Defendant.

It is true that Defendant recruited Co–Defendants Shriver and Denman as customers. At the time Defendant contracted Shriver and Denman they were already engaged in selling illegally modified descramblers obtained from a different source. Shriver and Denman owned their own satellite company and merely order[ed] inventory, albeit illegal inventory, from Defendant. Defendant simply filled Shriver and Denman's orders, he did not control how many descramblers were ordered or what happened to the descramblers once they were delivered. Accordingly, the 4 level enhancement is not proper.

(R. 149 at 2–3.)

However, the district court found that Fones qualified as a manager or supervisor:

As discussed above, Defendant did not have any control or authority over any of the other members of the conspiracy. Defendant cannot, however, be classified as a mere rank and file member of the conspiracy. The PSR makes clear that Defendant was the member of the conspiracy who did the actual modifying of the legal descramblers into illegal descramblers. Furthermore, Defendant was the party that recruited Defendants Shriver and Denman into the conspiracy. Defendant also set the terms of the relationship between himself, Shriver, and Denman, i.e. the price of the descramblers, the method of payment (cash only), and how many descramblers would be available. From these facts, Defendant cannot be classified as a mere middleman. A three level enhancement under § 3B1.1(b) is, therefore, appropriate.

*Id.*

In holding that Fones was a manager or supervisor, the district court relied upon three of the seven factors listed in note 4. Specifically, the district court stated that Fones recruited Shriver and Denman, that Fones' participation in organizing the criminal activity was significant, (Sentencing Tr. at 21) (where the district court noted that Fones "started this whole baby and this whole show on the road."), and that, by setting the terms of sale with Shriver and Denman and having sole responsibility for modifying the descramblers, Fones' continuing participation in the conspiracy was significant. Because Fones' relative responsibility in the conspiracy was greater than that of other conspirators and, as stated by the district court, crucial to the existence of the

criminal activity, the pre–1993 Guidelines law of this circuit would support the district court's finding that Fones was a manager or supervisor under § 3B1.1(b).[3]

Fones argues that even if he is more culpable than other participants in the conspiracy, since he did not "coordinate" or "orchestrate" the activities of others, an enhancement under § 3B1.1(b) is not appropriate. In support of this claim, Fones cites *Vargas*, 16 F.3d 155, where this court held as follows:

> An increase under Section 3B1.1 is appropriate for those defendants whose "relative responsibility" for the offense is found to have been greater than that of its other participants. In determining relative responsibility, a significant factor to be considered is whether the defendant exercised authority or control over others in the criminal operation. The fact, however, that the defendant did not exercise such control, in the sense of having the power to tell others what to do, does not necessarily disqualify the defendant for a Section 3B1.1 increase. Rather, in some cases it may be enough that the defendant "orchestrated" or simply "coordinated" the activities of others.
>
> Less than that, however, will not do. Supplying drugs and negotiating the terms of their sale do not by themselves justify a Section 3B1.1 increase, for these things do not indicate that the person who does them has a greater degree of responsibility for putting together the drug operation or a particular deal than anyone else involved, including the customer....
>
> Vargas might have earned a Section 3B1.1 increase had he been principally responsible for arranging the logistics of cocaine deliveries or payments, because this would

have required him to dictate to some extent, or at least coordinate, the actions of Favela and Lira.

*Vargas*, 16 F.3d at 160 (citing *United States v. Skinner*, 986 F.2d 1091, 1097, 1099 (7th Cir.1993); *United States v. Brown*, 944 F.2d 1377, 1381–82, 1385–86 (7th Cir.1991); *United States v. Rivero*, 993 F.2d 620, 624 (7th Cir.1993)).

Fones contends that *Vargas* mandates that where a defendant does not have control over others, a defendant must have at least "orchestrated" or "coordinated" the activities of others in order to be subject to an increase under § 3B1.1. Fones maintains that since the record does not demonstrate that he orchestrated or coordinated the actions of Shriver and Denman, the § 3B1.1(b) adjustment was in error. Indeed, if we were to interpret our holding in *Vargas* so narrowly, Fones might have a valid claim. Regarding Fones' coordination of the activity of Shriver and Denman, the district court's findings demonstrate no more than that Fones set the terms of sale between himself and Shriver and Denman. Under *Vargas*, this would not be enough to establish that Fones "coordinated" or "orchestrated" the activities of Shriver and Denman. *Vargas*, 16 F.3d at 160 (supplying contraband and negotiating the terms of the sale does not demonstrate that the defendant coordinated or orchestrated the activities of other participants). However, a showing that Fones had the principal responsibility for arranging the logistics of the delivery of the descramblers could support such a finding under *Vargas*. Since *Vargas* was decided after Fones' sentence was imposed, such a finding might have been made by the district court.[4]

---

3. While Fones is no more culpable than Daly, Shriver and Denman, more than one participant may be subject to a sentence adjustment under § 3B1.1. *United States v. Ramos*, 932 F.2d 611, 619 (7th Cir.1991); U.S.S.G. § 3B1.1, comment. (n. 4) ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."). Clearly, Fones bears a greater responsibility for the criminal activity here than the four Midwest salesmen, Woolridge, Toepke, Price, and Gates. Hence, Fones is more culpable than other members of the conspiracy.

4. There is testimony of record that Shriver and Denman picked up the descramblers at Beach Craft—the location where Fones made the descramblers. (Tr. at 25.) Moreover, there is testimony which shows that, at one point during Fones' business relationship with Shriver, he refused to deal with Shriver and required that Midwest salesmen pick up the descramblers. *Id.* at 26.

*Vargas,* however, does not require that a defendant without control over others must be found to coordinate or orchestrate the activities of others in order to be subject to an offense level increase under § 3B1.1. We have long held that relative responsibility is the central concern in determining whether an adjustment under § 3B1.1 is appropriate. To this point, this court has held that where a defendant does not supervise people, his management over the assets, property or activities of the criminal organization may support a § 3B1.1(b) adjustment. *Carson,* 9 F.3d at 592. While a defendant's coordination of the activities of others may demonstrate relative responsibility, so too may other factors.

Fones points out that *Vargas* expressly states that, while coordinating or organizing the criminal activity of others may be enough for sentence adjustment where the defendant does not exercise control over other participants in the sense of having the power to tell others what to do, "less will not do." However, there is no indication that *Vargas* intended to exclude the consideration of other factors which demonstrate relative responsibility. Rather, the *Vargas* court's intent was to make clear that the defendant's sales, without more, would not demonstrate sufficient relative responsibility to support an offense level increase under § 3B1.1. While an increase would have been proper if the defendant had at least coordinated the activities of others in conducting the sale, because the defendant only set the price of sale and delivered the contraband, we held that an increase was not justified. In *Young,* 34 F.3d 500, we cited *Vargas* for the proposition that relative responsibility, rather than control, is the key determination to be made in deciding whether to adjust a sentence under § 3B1.1. Because the *Young* court upheld an offense level increase under § 3B1.1(b) without explicitly finding that the defendant "coordinated" or "orchestrated" the activities of others, it did not interpret *Vargas* as limiting this court's definition of relative responsibility. Accordingly, under the pre–1993 Guidelines law of this circuit, the district court's adjustment of Fones' sentence under § 3B1.1(b) was not clearly erroneous.

However, under the November 1, 1993 version of note 2 to § 3B1.1, the district court's adjustment under § 3B1.1 would constitute an incorrect application of the sentencing guidelines. Note 2 (1993) provides:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1, comment. (n. 2).

■ Note 2 (1993) was issued in order to clarify § 3B1.1 because of questions raised by an intercircuit conflict. U.S.S.G., Appendix C, amendment 500. Specifically, while some circuits have held that control over a participant is a prerequisite to classifying a defendant as a leader, organizer, manager or supervisor under § 3B1.1, others have found that management over the property, assets or activities of a criminal activity is enough. This new note provides that an increased sentence may be warranted under either scenario. However, as indicated by the note, the method of sentence enhancement varies depending upon exactly what the defendant has control over. Specifically, where a defendant controls at least one other participant in the criminal activity, he can be classified as a leader, organizer, supervisor or manager for the purposes of an adjustment under § 3B1.1. While an adjustment under § 3B1.1 is not appropriate when the defendant does not have control over a participant, where the defendant is found to have exercised control over assets, property or the activities of the criminal enterprise, note 2 provides that an upward departure from the guidelines may be warranted. Hence, this note now requires that a defendant have control over at least one participant of the criminal activity in order to be subject to a sentencing enhancement under § 3B1.1. *United States v. Mustread,* 42 F.3d 1097, 1103 (7th Cir.1994).

Fones did not specifically mention note 2 (1993) before the district court and he does not do so on appeal. However, in his argument that he was not a manager or supervisor within the meaning of § 3B1.1(b), Fones does place particular emphasis on the fact that he did not have control over any other participants. Accordingly, we will consider note 2 (1993) in our review of this appeal.

■ As a general rule, the district court must apply the guidelines in effect at the time of sentencing which, in the instant action, was January 19, 1994. U.S.S.G. § 1B1.11(a). However, if the district court determines that "use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). Specifically, the application of a new guideline which would result in the imposition of a more severe sentence would constitute a violation of the *ex post facto* clause of the Constitution. *United States v. Aman,* 31 F.3d 550, 557 (7th Cir.1994). Here, the Pre–Sentence Investigation Report provided that the offense level calculations applicable at the time of the commission of the offense—the 1987 guidelines manual, including amendments through March, 1988—were more beneficial to Fones than those in the 1993 edition of the guidelines. Hence, the district court applied the 1987 version of the guidelines and the March, 1988 amendments. However, "if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." U.S.S.G. § 1B1.11(b)(2).

Because note 2 (1993) requires that a defendant have control over at least one other participant in order to be subject to an offense level increase under § 3B1.1, it effectively nullifies the law of the Seventh Circuit. Nonetheless, it must be viewed as a clarifying rather than substantive change to the application of § 3B1.1. As the United States Sentencing Commission expressly provides, "[t]his amendment clarifies the operation of [§ 3B1.1] to resolve a split among the courts of appeal." U.S.S.G., Appendix C, Amendment 500 (Nov. 1, 1993).

■ While the Sentencing Commission's deeming an amendment to be clarifying does not require this court to conclude that it is (to do so would allow the Sentencing Commission to make substantive changes under the guise of clarification), the Commission's interpretation of its own amendment is entitled to deference. *United States v. Perdomo,* 927 F.2d 111, 117 (2nd Cir.1991) (citing *United States v. Guerrero,* 863 F.2d 245, 250 (2nd Cir.1988)). *Cf. United States v. Montague,* 29 F.3d 317, 324 n. 5 (7th Cir.1994) ("Amendment 345 is a clarifying amendment, as is clear from the language in Appendix C."); *Ebbole v. United States,* 8 F.3d 530, 538 (7th Cir.1993) (where this court found a subsequent amendment to the guidelines to be substantive rather than clarifying, it was pointed out that "[u]nlike its practice on some occasions, the Sentencing Commission did not give courts any guidance whether it considered the 1992 amendment a clarification...."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1229, 127 L.Ed.2d 573 (1994).

Here, the amendment does not change the language of the applicable guideline, § 3B1.1. *But see Ebbole,* 8 F.3d at 538 ("Based on the language in the 1992 amendment, which replaced the entire text of the pre-existing Guideline, we agree with the government and conclude that the Sentencing Commission made a substantive change or modification to section 3E1.1, rather than a simple clarification."). Moreover, note 2 (1993) is a reasonable interpretation of the plain language of § 3B1.1—that having control or authority over individuals is part of what it means to be a leader, organizer, supervisor, or manager.

Accordingly, note 2 (1993) constitutes a clarification of the appropriate application of § 3B1.1 rather than a substantive change to the guidelines. Because Fones was sentenced on January 19, 1994, after note 2 (1993) became effective, note 2 (1993) should have been considered by the district court in sentencing Fones.

The district court found that Fones had no control or authority over any other participants. Accordingly, in light of note 2 (1993), the district court's application of § 3B1.1(b) constitutes an incorrect application of the guidelines.[5] However, the factors relied upon by the district court in finding an enhancement under § 3B1.1(b) to be appropriate could support an upward departure from the applicable guidelines range. Specifically, the district court's findings demonstrate that Fones had management responsibility over the assets, property and, to some extent, the activity of the criminal organization. A decision to depart, unlike an adjustment under § 3B1.1(b), is within the absolute discretion of the district court. Moreover, if the district court chooses to depart, it has the discretion to determine the amount of increase in the defendant's sentence. Because, therefore, a different sentence might result, we VACATE the sentence and REMAND the case to the district court to determine whether an upward departure is warranted. *See* 18 U.S.C. § 3742(f)(1) ("If the court of appeals determines that the sentence—(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings

with such instructions as the court considers appropriate").

---

5. This court has held that " '[e]fforts to marshall other individuals for the purpose of executing the crime' are enough to demonstrate sufficient control over a participant for purposes of § 3B1.1(a)." *United States v. Sax*, 39 F.3d 1380, 1392 (7th Cir.1994) (citing *United States v. Carson*, 9 F.3d 576, 585 (7th Cir.1993)). *See also United States v. Guyton*, 36 F.3d 655, 662 (7th Cir.1994) ("Organizing or enlisting others for the purpose of executing the crime can constitute sufficient control of another under § 3B1.1(a)."). It would follow that efforts of recruitment would likewise be sufficient to establish control over a participant under § 3B1.1(b). The reason that efforts to recruit have been found to demonstrate control over those recruited is that, generally, those recruited are subordinate to the recruiter. *Cf. United States v. Brown*, 944 F.2d 1377, 1381 (7th Cir.1991) (In order for a defendant to be subject to an increase under § 3B1.1, " 'the defendant must have exercised some degree of control over others involved in the commission of the offense **or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms 'organizer, leader, manager and supervi-**

sor,' each of which suggests the presence of underlings or subordinates....' ") (emphasis added) (quoting *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir.1990)). Here, Fones recruited Shriver and Denman by appearing at Midwest and offering a supply of modified descramblers. However, Shriver and Denman were anything but subordinates of Fones. (R. at 149) ("At the time Defendant contracted Shriver and Denman they were already engaged in selling illegally modified descramblers obtained from a different source. Shriver and Denman owned their own satellite company and merely order[ed] inventory, albeit illegal inventory, from Defendant. Defendant simply filled Shriver and Denman's orders, he did not control how many descramblers were ordered or what happened to the descramblers once they were delivered."). It is no surprise that the district court explicitly found that Fones had no control or authority over Shriver and Denman. Hence, while Fones' recruiting of Shriver and Denman may have established "control" over them, the district court found that it did not.