**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Tunji AKINRINADE, Defendant–Appellant.**

No. 94–1385.

United States Court of Appeals, Seventh Circuit.

Argued March 27, 1995.

Decided July 21, 1995.

Lagos, Nigeria to Chicago, Illinois from at least 1990 through 1991. The organization was headed by Akinrinade's co-defendants, Taiwo and Kehinde Oshodi, Nigerian twin brothers. ("Taiwo" and "Kehinde"). The trafficking organization used several Nigerian nationals as drug couriers to transport the heroin to Chicago by either swallowing balloons filled with heroin or concealing it in luggage. Once the heroin couriers arrived in Chicago, the drugs were delivered to Akinrinade or Kehinde, who packaged it for further distribution.

The charged conspiracy ran from in or about June 1991 until August 21, 1991, and involved the smuggling of in excess of 1200 grams of heroin from Nigeria to the United States. Among the couriers employed by the organization were Matthew Omololu Pension Smith, Bunmi Kinsoto, and Samuel B. Johnson, a/k/a "Bobby."

On August 21, 1991, Smith was stopped by United States Customs Inspectors at Kennedy International Airport, New York. His luggage was inspected resulting in the seizure of more than 1,200 grams of heroin.

Smith testified at trial that he had, on four prior occasions, smuggled heroin into the United States for the Oshodi/Akinrinade organization by swallowing balloons filled with heroin. On his final trip, Smith was told by the Oshodi twins that it was too dangerous to bring the heroin into the country in balloons, so they would provide two suitcases with the drugs secreted in them. Smith met the brothers in Lagos on August 21, 1991. The Oshodi brothers transferred Smith's clothing into the suitcases, and told him that there were 900 grams of heroin inside. (At the time of the inspection, 1289 grams were discovered.) Smith was told that he would be met by someone at Kennedy Airport, and was given a telephone number for "Tunji" in Chicago.

After his arrest, Smith agreed to cooperate fully with the government and to make consensually monitored telephone calls to Chicago to arrange for delivery of the drugs. In

William D. Shaver, Asst. U.S. Atty. (argued), Crim. Div., Chicago, IL, for plaintiff-appellee.

Frederick F. Cohn (argued), Chicago, IL, for defendant-appellant.

Before EASTERBROOK and KANNE, Circuit Judges, and STIEHL, District Judge.*

STIEHL, District Judge.

Tunji Akinrinade was convicted by a jury of conspiracy to possess with intent to distribute mixtures containing heroin, in violation of 21 U.S.C. § 846. The defendant challenges his conviction and sentence. We affirm on all grounds.

## I. BACKGROUND

Tunji Akinrinade was a key player in a heroin trafficking organization responsible for smuggling large amounts of heroin from

* The Honorable William D. Stiehl of the United States District Court for the Southern District of Illinois, sitting by designation.

addition, he agreed to participate in a controlled delivery in the company of agents. Smith's call to the number he had been given for "Tunji" was unable to be completed, so at the direction of the customs agents he called the Oshodi brothers in Nigeria. Speaking in a combination of English and Yoruba, a Nigerian language, Smith informed Taiwo and Kehinde that no one had met him at Kennedy Airport. The brothers told Smith to call "Tunji" at a different telephone number and to go to Chicago to make the delivery. Smith called the new number for Akinrinade, again speaking in English and Yoruba. Smith asked Akinrinade why he had not been met at Kennedy, but told Akinrinade that everything was alright, and that he had two suitcases with the heroin. Akinrinade directed Smith to book a flight to Chicago and that he would be met when he arrived. Another courier, Kinsoto, was with Akinrinade at the time of this conversation, and heard it over a speaker telephone. Kinsoto's testimony concerning this conversation corroborated Smith's. Following the conversation, Akinrinade told Kinsoto that he did not trust Smith, and that he was going to forward his calls to Johnson's house.

The customs agents booked a flight to Midway Airport for Smith, who called Akinrinade. The forwarded call was answered by Johnson's roommate, a woman named Adinike Benire. She told Smith that Johnson had flown to LaGuardia and that Smith should meet him at the Midway Airlines gate. Smith and the customs agents went from Kennedy to LaGuardia. They were unable to locate Johnson, who testified that he returned to Chicago when he failed to find Smith. Smith placed one last call to Akinrinade. Benire, answering the forwarded call, informed Smith that Johnson had returned to Chicago and that Smith should come to Chicago where he would be met by either Johnson or Akinrinade. All of the telephone calls, except the last one made at LaGuardia, were consensually monitored, translated, and admitted into evidence at trial.

Upon arrival at Midway Airport in Chicago, Smith, while under surveillance, claimed the two bags and was met by Johnson. The agents arrested Johnson after the luggage had been placed in the trunk of his Mercedes. Smith, Johnson, and Kinsoto were all witnesses for the government.

## II. DISCUSSION

### A. Assertions of Trial Error

■ We review district court evidentiary rulings for an abuse of discretion. *United States v. Mounts*, 35 F.3d 1208, 1214 (7th Cir.1994). "An abuse of discretion occurs only when no reasonable person could take the view of the trial court." *Id.*, (citation omitted).

#### 1. Testimony of Agent Jackson

■ The defendant asserts that the district court erred when it permitted Special Agent Amanda Jackson, United States Customs Service, to testify that the drugs seized from Smith were destined for Chicago for delivery to the defendant. The crux of defendant's complaint is that Agent Jackson testified as to the content of Smith's monitored calls, the greatest portions of which were in Yoruba, which she could not understand.

At trial, the defendant only made three specific objections to agent Jackson's direct examination testimony. The first was to the government's question concerning Smith's initial consensually monitored telephone call to a Chicago telephone number which turned out to be incorrect. The defendant objected on the grounds that the agent's testimony was a summary, and the Court overruled the objection. The second objection was to the description by Agent Jackson of Smith's second successful call to Chicago when he spoke with a woman (later identified as Benire), and the directions Benire gave him to meet Johnson at LaGuardia Airport. The defendant made a general hearsay objection to this testimony which the court overruled. The third objection occurred when the government returned to the first attempted monitored telephone call which involved a wrong telephone number. The defendant objected on the grounds that the testimony was a conclusion. The district court overruled the objection and admitted this evidence in order to put into context the subsequent

actions of Agent Jackson, as well as the subsequent acts of Smith, as directed by Agent Jackson.

■ A district court's ruling whether to admit out-of-court statements as non-hearsay is discretionary, and will be reversed only for an abuse of discretion. *United States v. Colston,* 936 F.2d 312, 316 (7th Cir.), *cert. denied,* 502 U.S. 951, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991). Hearsay is defined in Fed.R.Evid. 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, Agent Jackson's testimony was properly admitted by the trial court as non-hearsay evidence. *United States v. Sanchez,* 32 F.3d 1002, 1005 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 346, 130 L.Ed.2d 302 (1994); *United States v. Levine,* 5 F.3d 1100, 1107 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1224, 127 L.Ed.2d 569 (1994). The testimony at issue was not admitted to prove the truth of the asserted matter, but only to establish the course of the investigation, including the background as to why Agent Jackson directed Smith to place the sequence of telephone calls to Nigeria and Chicago.

■ On review, we apply an abuse of discretion standard to evidence admitted over objection; however, we review the admissibility of evidence to which an objection was not made for plain error. *United States v. Caputo,* 978 F.2d 972, 974 (1992). The Court finds that the trial court properly admitted Agent Jackson's testimony as non-hearsay over defendant's objection.

■ Although the defendant now asserts that the admission of Agent Jackson's testimony was also in violation of his rights under the confrontation clause, he did not specifically raise this objection at trial. This claim is therefore reviewed for plain error. *Id. See also* Fed.R.Crim.P. 52(b), and *United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (where the Court stated: " 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil

cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " *Id.* at ——, 113 S.Ct. at 1776, *quoting Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944)). Plain error is that which affects substantial rights, *id.* Only those errors which "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936), *quoted in Olano,* —— U.S. at ——, 113 S.Ct. at 1776, constitute plain error which would warrant reversal. Here the admission of Agent Jackson's testimony was not plain error and there was no miscarriage of justice. The defendant was able to fully cross-examine Agent Jackson as well as Smith concerning the recorded telephone calls. In light of the overwhelming evidence in this case, reversal is not warranted.

### 2. *The Trial Court's Failure to Instruct the Jury on the Use of Jackson's Testimony*

■ The defendant asserts that the trial court failed to adequately inform the jury of the limited use of Agent Jackson's testimony. The defendant specifically points to the following portion of Agent Jackson's testimony and the trial court's ruling:

MR. SHAVER:

Q All right. Now, going back to when you were at Kennedy Airport when Mr. Smith made the first phone call, who was he trying to call when he got the wrong number?

MR. COHN: Objection, your honor. That's conclusionary. She wouldn't know.

THE COURT: I'll overrule the objection. Your point is that she wouldn't know it was the wrong number?

MR. COHN: No, the question as I understood it, was, whose number was it that he was trying to call. I mean, she would only know that based on what somebody told her or if she checked phone records. I mean, she is now being asked to give a summary conclusion.

MR. SHAVER: Again, your Honor, it is for that lead to the follow-up phone call. The phone call to Nigeria she has already

testified to. I think this is the only thing she omitted in the testimony. I haven't asked the question—

THE COURT: Well, one moment. You're asking her who Mr. Smith said he was calling with that number?

MR. SHAVER: Correct.

THE COURT: It sounds like hearsay to me.

MR. SHAVER: Well, Judge, it shows the followup and subsequent actions. It's not to prove—

THE COURT: All right, I'll allow it then for the limited purpose of putting it in context and as a preface to the next question.

BY MR. SHAVER:

Q  Who did he indicate he was trying to call on that first aborted phone call?

A  He was trying to call the individual Tunji.

(Tr. 38–39). Defense counsel then cross-examined Agent Jackson at length. The defendant now asserts that the district judge erred because he failed to immediately instruct the jury on the limited use of this testimony.[1] There is nothing in the record, however, to indicate that the defendant sought a specific limiting instruction at the time of the testimony, or that he tendered an appropriate instruction governing the jury's consideration of this evidence.[2] "The Court, in the absence of a request for a limiting instruction, is not required to give one." *United States v. Holt,* 817 F.2d 1264, 1274 n. 9 (7th Cir.1987).

Therefore, the Court finds that Akinrinade's assertions of error with respect to Agent Jackson's testimony are without merit.

### 3. *Limitations on Cross-examination of Government Witnesses*

Akinrinade next asserts that the district court erred when it limited the cross-examination of Smith, Johnson and Kinsoto. The defendant claims that the court limited his inquiry into: (a) the motivation of these witnesses to testify against the defendant in order to receive reduced sentences; and (b) the lies the witnesses made on the customs declaration forms filled out when they entered the United States.

■ The Sixth Amendment Confrontation Clause provides that an accused has the right in a criminal prosecution "to be confronted with the witnesses against him." U.S. CONST. amend. VI. The right to confront witnesses includes the right to cross-examine, but that right is certainly not unlimited. *United States v. Moore,* 936 F.2d 1508, 1519 (7th Cir.), *cert. denied,* 502 U.S. 991, 112 S.Ct. 607, 116 L.Ed.2d 630 (1991). Fed. R.Evid. 611(b) provides: "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Trial judges, therefore, have the right to control the scope of cross-examination in conformance with Rule 611(b). The Supreme Court has recognized this discretion of trial judges to limit cross-examination.

"We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis [v. Alaska,* 415 U.S. 308] 316–17 [94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)], (citing *Greene v. McElroy,* 360 U.S. 474 [79 S.Ct. 1400, 3 L.Ed.2d 1377] (1959)). It does not follow, of course, that

---

**1.** The defendant characterizes a substantial portion of the previously excerpted testimony as having been made outside the hearing of the jury. A careful reading of the transcript does not support defendant's characterization. Rather, the exchanges between counsel, including the speaking objections made by defense counsel, as well as the trial court's rulings, appear to have all occurred in open court before the jury. There is no indication in the record that it occurred at sidebar outside the hearing of the jury.

**2.** The Court notes that not every type of nonhearsay evidence requires a limiting or caution-

ary instruction. There is no specific Seventh Circuit Pattern Instruction governing the admission of this type of testimony, although the trial court certainly could have specifically instructed the jury not to judge the truthfulness of the third party's statement. *See, e.g. United States v. Martinez,* 939 F.2d 412, 414 (7th Cir.1991). The judge, however, did state in open court that "for this purpose, since it's not admitted for the truth, it's irrelevant as to whether or not the voice at the other end was telling the truth. So hearsay is not implicated. She may answer." (Tr. 27).

the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (*per curiam*).

*Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1434–35, 89 L.Ed.2d 674 (1986). "Thus, the sufficiency of cross-examination turns on 'whether the jury had sufficient information to make a discriminating appraisal of the witness' motive and bias.'" *United States v. Williams*, 858 F.2d 1218, 1223 (7th Cir.1988), *cert. denied*, 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989), *quoting United States v. Rodgers*, 755 F.2d 533, 548 (7th Cir.), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985); *Moore*, 936 F.2d at 1518. We will review "the limitations placed upon specific instances of cross-examination in the context of the entire case." *Moore, id.; United States v. Cameron*, 814 F.2d 403, 406 (7th Cir.1987).

The district court's discretion in controlling the extent of cross-examination is broad. For cross-examination has no natural limits, and the trial judge must therefore exercise judgment in deciding when the point of diminishing returns has been reached, or passed—a judgment that will depend on the particulars of each case, and on such unreviewable imponderables as the judge's assessment of the jury's comprehension and attention span.

*United States v. Herrera–Medina*, 853 F.2d 564, 566 (7th Cir.1988) (citations omitted), *quoted in Moore*, 936 F.2d at 1518.

Here, the trial court properly exercised its discretion with respect to the cross-examination of Smith, Johnson and Kinsoto. We note that despite the defendant's characterization, the cross-examinations of these witnesses were far from restricted. The defendant cross-examined these witnesses at length, and only when the cross became repetitive or cumulative did the district judge impose restraints. There was no limitation placed on the matters into which defendant could inquire, and he was given wide latitude to attempt to impeach the government's witnesses. We therefore find that the trial judge did not abuse his discretion in limiting cross-examination.

### 4. *Limiting Instruction on Other Acts Evidence*

■ The defendant contends that it was error for the district court to fail to instruct the jury about the limited use of the "other acts" evidence of the defendant admitted during the testimony of government witness Kinsoto. The government filed a pre-trial motion to admit "other acts" evidence of the defendant's heroin trafficking which took place before and after the charged indictment. Specifically, the government sought to introduce evidence that the defendant and co-defendants, the Oshodi brothers, smuggled heroin into, and currency out of, the United States for a period of one and one-half years prior to the time period charged in the indictment, and a few days after the end of that time period. The trial judge admitted this evidence on the grounds that it was intricately related to the course of conduct of the charged offense.

■ This Court has held that evidence of uncharged crimes is admissible

to provide the jury with a "complete story of the crime [on] trial," *United States v. Roberts*, 933 F.2d 517, 520 (7th Cir.1991) (internal quotations omitted, brackets in the original), whether its absence would create a "chronological or conceptual void" in the story of the crime, *see United States v. Hattaway*, 740 F.2d 1419, 1424–25 (7th Cir.1984); *United States v. Adamo*, 882 F.2d 1218, 1234 (7th Cir.1989), or whether it is "so blended or connected" that it

incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime. *United States v. Bucey,* 876 F.2d 1297, 1315 (7th Cir.1989).

*United States v. Ramirez,* 45 F.3d 1096, 1102 (7th Cir.1995). Further:

> Thus, cases applying the "intricately related" doctrine have recognized that evidence concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of "other acts" within the meaning of Fed.R.Evid. 404(b). *See United States v. Zarnes,* 33 F.3d 1454, 1469 (7th Cir.1994) (evidence of drug transactions completed before conspiracy began was intricately related to conspiracy case because it showed how the relationship between the parties began and blossomed into the charged conspiracy)....

*Id.* In this case, the government introduced evidence through the testimony of Smith, Johnson, and Kinsoto, of the defendant's heroin trafficking activities with his co-defendants, the Oshodi brothers, including the smuggling of heroin from Nigeria to the United States. These activities were clearly part of the Nigerian/Chicago narcotics trafficking organization in which the defendant was an integral player, and are directly connected to the charged offense. The evidence concerning the smuggling procedures employed by the trafficking organization before the time of the charged conspiracy was properly admitted to show the relationships of the co-conspirators, and how the heroin operation functioned. *United States v. Zarnes,* 33 F.3d 1454, 1469 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2286, 132 L.Ed.2d 288 (1995). In short, this evidence gave the jury an accurate picture of the charged crime. It was not evidence of unrelated acts, admitted for a limited purpose under Rule 404(b). Therefore, the trial court was not required to give a limiting instruction either at the time of the admission of

this evidence or as part of the charge to the jury.[3]

In addition, and apparently out of an abundance of caution, the court gave a modified 404(b) instruction agreed to by the parties. The defendant has not raised the issue of whether it was error for the trial court to charge the jury on the use of 404(b) evidence, or whether the modification to the pattern instruction 3.08 was proper. The Court, therefore, makes no findings with respect to these issues.

### B. *Challenges to the Jury Charge*

#### 1. *The Record on Appeal*

■ The defendant contends that the court erred in the giving of certain jury instructions. Before addressing the merits of those claims, the Court notes that the record on appeal does not include the tendered, refused or modified instructions. The only instructions made a part of the record are the unmarked copies which actually went to the jury. We assume the trial court automatically includes as part of the record all instructions tendered, refused, and modified (as well, of course, as those actually given) and that they were, by oversight or other mistake, not made a part of the record on appeal. The defendant, who challenges the instructions actually given, bears part of the responsibility to ensure that the complete instructions are contained in the record on appeal. The Court notes that on January 13, 1995, the trial court granted the government's motion to supplement to include, *inter alia,* "any and all jury instructions." As this Court stated in *United States v. Adcox,* 19 F.3d 290, 293 n. 1 (7th Cir.1994):

> [I]t is the attorneys, who are representing the respective litigants, that share the responsibility along with the court clerk to make sure that the entire court record is transmitted to the appellate court for review. This is especially true when the proceeding not included ... deals with the very issue presented on appeal and also

---

**3.** Although at trial the defendant objected to the admission of the evidence based on the government's theory that it was intricately intertwined to the charged conspiracy, he did not raise this issue on appeal until his reply brief, thereby

waiving challenges to the admission of the evidence on this ground. *Reed v. United States,* 985 F.2d 880, 882 n. 2 (7th Cir.1993). *See also* Circuit Rule 28(f) ("A reply brief shall be limited to matter in reply.").

directly impacts the proper appellate standard of review.

*See also* Fed.R.App.P. 10(a) (which requires the district court clerk to transmit the record, including "[t]he original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries ...,") and Rule 11(b) (which directs the clerk of the district court to transmit the record, when it is "complete for purposes of the appeal," to the Clerk of the Court of Appeals.).

■ When a defendant specifically challenges the sufficiency of a jury instruction given as part of the charge, it is the defendant's responsibility to ensure that the record placed before the reviewing court contains all the items necessary for review. If the record does not include the tendered instructions which the defendant argues were preferable to those actually given, the defendant should seek to supplement the record on appeal with these items, thereby placing the reviewing court in a position to consider the relative merits of the instructions.

This the defendant did not do, and the only clues in the record as to the merits of his tendered and refused instructions are those portions of the transcript which contain the jury instruction conference. These are, however, sufficient to enable this Court to determine that the trial court did not err in giving the instructions included as part of the jury charge.

### 2. *Sufficiency of the Jury Instructions*

This Court has stated "[w]e review jury instructions as a whole, and so long as they treat the issues fairly and adequately, we will not disturb them on appeal." *United States v. Stephenson*, 53 F.3d 836, 847 (7th Cir. 1995), *citing United States v. Sax*, 39 F.3d 1380, 1388 (7th Cir.1994); *United States v. Jackson*, 51 F.3d 646, 653 (7th Cir.1995).

### a. *Combining Seventh Circuit Pattern Instructions 3.20 and 3.23*

■ The trial court combined Seventh Circuit Pattern Instructions 3.20 and 3.23 relating to the jury's consideration of the testimony of Smith and Johnson.[4] These instructions are cautionary, and contain identical language directing the jury to give the "testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care." The defendant asserts that the combining of the two instructions harmed him by somehow denying him his Sixth Amendment confrontation rights. This assertion is without merit, and requires little discussion because it simply was not error for the court to combine these instructions in the manner it did.

### b. *Prior Inconsistent Statements*

The district court refused to give defendant's tendered instruction concerning impeachment of witnesses through prior inconsistent statements, Seventh Circuit Pattern Instruction 3.18, on the grounds that the defendant had not proven prior inconsistent statements were made by any witness.

We have previously held that "[a]n instruction need be given only when it addresses an issue reasonably raised by the evidence." *United States v. Martinez*, 988 F.2d 685, 698 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 127, 126 L.Ed.2d 91 (1993). The defendant identifies several "inconsistencies" in the testimony of Smith, Johnson and Kinsoto. We have reviewed these asserted inconsistencies and find them to be without substance. There simply were no clear inconsistencies in testimony. The defendant's attempts to impeach these witnesses did not establish prior inconsistent statements which mandated the 3.18 instruction. The Court further notes that, even if the trial court erred in failing to give this instruction, the omission was harmless error at best. We consider it most improbable that the jury

---

4. The court gave the following instruction:
The witnesses, Matthew Omolou Pènsion Smith and Samuel B. Johnson have each pleaded guilty to a crime arising out of the same occurrence for which the defendant is now on trial, and you have heard testimony that they have received benefits from the government in connection with this case. You may give their testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care. Moreover, their guilty pleas are not to be considered as evidence against the defendant.

was misled in its assessment of these witnesses' testimony and we therefore hold that the rejection of defendant's tendered instruction did not prejudice the defendant.

### c. *The Conspiracy Instruction*

■■■ The trial court gave the following conspiracy instruction as part of its charge:

In order to establish the offense of conspiracy as charged in the indictment, the government must prove these elements beyond a reasonable doubt:

1. that the alleged conspiracy existed, and

2. that the defendant knowingly and intentionally became a member of the conspiracy.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

A conspiracy is a combination of two or more persons to accomplish an unlawful purpose. A conspiracy may be established even if its purpose was not accomplished.

In determining whether the alleged conspiracy existed, you may consider the actions and statements of all the alleged participants. The agreement may be inferred from all the circumstances and the conduct of all of the alleged participants. Only the defendant's own words and acts show whether he joined a conspiracy. But you may consider the statements of all the alleged participants to decide what it was that the defendant did and said or to help you understand the defendant's acts or words.

To be a member of the conspiracy, the defendant need not join at the beginning or know all the other members or the means by which the purpose was to be accomplished. The government must prove beyond a reasonable doubt that the defendant was aware of the common purpose and was a willing participant.

The defendant asserts that the trial court erred in failing to add that to be guilty of the conspiracy the defendant must act to try to make the conspiracy succeed. The Court rejects this contention. The instruction given by the trial court adequately and fairly states the elements of a conspiracy. *See Stephenson*, 53 F.3d at 847. "To show that a defendant was involved in the conspiracy, the government must show that he '(1) knew of the conspiracy, and (2) intended to associate himself with the criminal scheme.'" *Id.* at 843, *quoting United States v. Schumpert*, 958 F.2d 770, 773 (7th Cir.1992). *See also United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir.1991).

### d. *Mere Presence and Mere Association Instruction*

■■■ The defendant asserts that the district court erred when it gave government's instruction No. 19: "Mere presence at the scene of the crime or mere association with conspirators will not themselves support a conspiracy conviction. Presence or a single act will suffice if the circumstances permit the inference that the presence or act was intended to advance the conspiracy." This modification of the Seventh Circuit Pattern Instruction 3.04 has been approved by this Court as an "accurate statement of the law." *United States v. Simone*, 931 F.2d 1186, 1193 (7th Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991). The defendant's tendered pattern instruction 3.04, was refused by the trial court in favor of government's 19. The instruction given, when considered with the instructions as a whole, properly informed the jury on the law in this circuit.

Therefore, the Court rejects each of defendant's challenges to the jury instructions, and affirms his conviction on the charged conspiracy on all grounds.

## III. SENTENCING CHALLENGES

■■■ The defendant raises two challenges to his sentence. We review the findings of a district court at sentencing for clear error, but its interpretation of the sentencing guide-

lines is reviewed *de novo. United States v. Fones,* 51 F.3d 663, 665 (7th Cir.1995); *United States v. Young,* 34 F.3d 500, 504 (7th Cir.1994).

■ The defendant asserts that the district court erred when it calculated his base offense level based on the other relevant conduct provision of USSG § 1B1.3. To determine the base offense level, the district court found that the defendant's relevant conduct included the total amount of heroin brought into the United States by the Oshodi/Akinrinade organization. The district court found that the 6,200 grams of heroin brought into the country through the activities of Smith, Johnson and Kimsoto was reasonably foreseeable to the defendant, and when combined with the 1,239 grams involved in the Smith seizure, brought the total amount of defendant's relevant conduct to 7,439 grams. This gave the defendant a base offense level of 34. "District court determinations of drug amounts are reviewed for clear error, and credibility determinations are given deference so long as support exists in the record." *United States v. Garrett,* 45 F.3d 1135, 1141 (7th Cir.), *cert. denied,* ——— U.S. ———, 115 S.Ct. 2015, 131 L.Ed.2d 1013 (1995). "In a drug conspiracy, each conspirator is responsible not only for amounts with which he was directly involved, but also for amounts involved in transactions by co-conspirators that were reasonably foreseeable to him." *United States v. Paters,* 16 F.3d 188, 191 (7th Cir.1994), *quoted in Garrett,* 45 F.3d at 1141.

In this case there is ample evidence in the record to support the district court's finding. The history of Akinrinade's drug dealing was well detailed at trial, and the trial judge had ample opportunity to assess the credibility of the co-conspirators Johnson, Smith and Kinsoto. The overwhelming weight of the evidence at trial supports the district court's finding that Akinrinade's relevant conduct involved at least 7,439 grams of heroin.

■ The defendant also asserts that the trial court erred when it imposed a three-point enhancement pursuant to USSG § 3B1.1 for the defendant's role as a manager and supervisor under § 3B1.1(b). This Court recently stated: "The primary concern

of section 3B1.1 is the imposition of a punishment commensurate with the defendant's 'relative responsibility within a criminal organization.'" *United States v. Johnson–Dix,* 54 F.3d 1295, 1309 (7th Cir.1995), *quoting Fones,* 51 F.3d at 665. We have relied upon the factors listed in USSG § 3B1.1, App. Note 4, to assess the defendant's relative responsibility. These factors include:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, App. Note 4; *Johnson–Dix,* 54 F.3d at 1309; *Fones,* 51 F.3d at 665. Not all of these factors need be present, and one is not more critical to this determination than any other.

> Although we have placed particular emphasis on whether the defendant exercised control over other participants in criminal activity (*Fones,* 51 F.3d at 666; *United States v. Brown,* 944 F.2d 1377, 1381 (7th Cir.1991)) our overall focus on "relative responsibility" means that no one factor is essential to application of this enhancement.

*Johnson–Dix,* 54 F.3d at 1309; *Fones,* 51 F.3d at 665–66. The district court made appropriate findings based on the record that the § 3B1.1 enhancement was warranted.

The district court noted that the defendant had a "planning, and management, leadership" role in the organization by virtue of the fact that the defendant directed Smith's activities with respect to arrangements for the August 21, 1991 heroin delivery to the defendant in Chicago. Akinrinade also managed Johnson and Kinsoto as part of the conspiracy. The record further supports the enhancement because the defendant's involvement in the operation of this network was extensive. The defendant recruited Kinsoto and traveled to Nigeria with Kinsoto. We find that the district court's three-point enhancement based on a finding that the defen-

dant had a managerial role is well supported by the record, and in compliance with the provisions of USSG § 3B1.1. Accordingly, the defendant's attack on his sentence is without merit.

### IV. CONCLUSION

For all the reasons set forth above, the conviction and sentence of Tunji Akinrinade is

AFFIRMED.